**FILED**
**JAMES J. WALDRON, CLERK**

**NOV 1 3 2015**

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY _____ DEPUTY

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
Caption in Compliance with D.N.J. LBR 9004-1

**LOWENSTEIN SANDLER LLP**
Kenneth A. Rosen, Esq.
Bruce Buechler, Esq.
Gerald C. Bender, Esq.
Michael Savetsky, Esq.
Barry Z. Bazian, Esq.
65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Proposed Counsel to the Debtors and
Debtors-in-Possession*

In re:

East Orange General Hospital, Inc., *et al.*,[1]

                Debtors.

Chapter 11

Case No. 15 – 31232 (VFP)

Jointly Administered

## INTERIM ORDER (A) AUTHORIZING POSTPETITION USE OF CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION TO THE BANK, (C) MODIFYING THE AUTOMATIC STAY, (D) SCHEDULING A FINAL HEARING, AND (E) GRANTING RELATED RELIEF

    The relief set forth on the following pages, numbered two (2) through and including thirty-two (32), is hereby **ORDERED.**

*November 13, 2015*

                               Vincent F. Papalia, U.S.B.J.

---

[1]  The Debtors and the last four digits of their Employer Identification Numbers are East Orange General Hospital, Inc. (7166) and Essex Valley Healthcare, Inc. (7667).  The Debtors' principal place of business is located at 300 Central Avenue, East Orange, NJ 07018.

Page:      2
Debtors:   East Orange General Hospital, Inc., *et al.*
Case No.:  15 – 31232 (VFP)
Caption:   Interim Order (A) Authorizing Postpetition Use of Cash Collateral, (B) Granting
           Adequate Protection to the Bank, (C) Modifying the Automatic Stay, (D) Scheduling
           a Final Hearing, and (E) Granting Related Relief

---

Upon the motion (the "Motion")[2] of debtor and debtor in possession, East Orange General

Hospital, Inc. (the "EOGH"), and its affiliated debtor, Essex Valley Healthcare, Inc. (the

"Affiliated Debtor") for entry of this interim order (this "Interim Order"):  (a) authorizing the

Debtors to use the Cash Collateral as defined herein; (b) providing adequate protection with respect

to the diminution in value, if any, of the interests of the Bank (as defined below) as may result

from the use of the Cash Collateral, to the extent set forth herein; (c) modifying the automatic stay,

to the extent set forth herein; (d) scheduling, pursuant to Bankruptcy Rule 4001, a final hearing

(the "Final Hearing") granting the relief sought in the Motion on a final basis pursuant to the final

order (the "Final Order"); and (e) granting related relief;

An initial hearing on the Motion having been held by this Court on November 13, 2015

(the "Interim Hearing"), and the Court having considered the Motion, the *Declaration of Martin A.*

*Bieber in Support of First Day Motions*, and the evidence submitted or adduced and the arguments

of counsel made at the Interim Hearing; and notice of the Motion and the Interim Hearing having

been given in accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d), and 9014; and the

Interim Hearing to consider the interim relief requested in the Motion having been held and

concluded; and all objections, if any, to the relief requested in the Motion having been withdrawn,

resolved, or overruled by the Court; and it appearing to the Court that granting the relief requested

is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the

Final Hearing, and is otherwise is fair and reasonable, in the best interests of the Debtors, their

estates, and their creditors, and equity holders, and essential for the maximization of the assets of

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Page:      3
Debtors:   East Orange General Hospital, Inc., *et al.*
Case No.:  15 – 31232 (VFP)
Caption:   Interim Order (A) Authorizing Postpetition Use of Cash Collateral, (B) Granting
           Adequate Protection to the Bank, (C) Modifying the Automatic Stay, (D) Scheduling
           a Final Hearing, and (E) Granting Related Relief

the Debtors' business; and after due deliberation and consideration, and for good and sufficient

cause appearing therefor;

## THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW[3]:

A.    Petition Date.    On November 10, 2015 (the "Petition Date"), EOGH and the

Affiliated Debtor filed voluntary petitions with this Court for relief under chapter 11 of the

Bankruptcy Code.  The chapter 11 case filed by EOGH is referred to herein as the "Case" and

together with the chapter 11 case filed by the Affiliated Debtor are hereafter collectively referred to

as the "Cases".

B.    Debtors in Possession.    The Debtors continues to operate their business and manage

their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code.  No trustee or examiner has been appointed in the Cases.

C.    Jurisdiction and Venue.    This Court has jurisdiction over these proceedings, and the

persons and properties affected hereby, pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper

pursuant to 28 U.S.C. §§ 1408 and 1409.  The Motion is a core proceeding pursuant to 28 U.S.C.

§ 157(b).

D.    Committee.    As of the date hereof, the United States Trustee for the District of

New Jersey has not yet appointed an official committee of unsecured creditors in the Cases

pursuant to section 1102 of the Bankruptcy Code (a "Creditors' Committee").

---

[3] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact
pursuant to Fed. R. Bankr. P. 7052.

Page:       4
Debtors:    East Orange General Hospital, Inc., *et al.*
Case No.:   15 – 31232 (VFP)
Caption:    Interim Order (A) Authorizing Postpetition Use of Cash Collateral, (B) Granting
            Adequate Protection to the Bank, (C) Modifying the Automatic Stay, (D) Scheduling
            a Final Hearing, and (E) Granting Related Relief

---

E.    <u>Debtors' Representations</u>.  Without prejudice to the rights of any other party, but in each case subject to the limitations contained in Paragraph 4 below, the Debtors represent, admit, stipulate, and agree (collectively, the "<u>Debtors' Stipulations</u>") as follows:

(i).    <u>Cash Collateral</u>.  Any and all of the Debtors' cash, including cash and other amounts on deposit or maintained in any account or accounts by the Debtors and any amounts generated by the collection of accounts receivable or other disposition of the Prepetition Collateral (as defined herein) existing as of the Petition Date, and the proceeds of any of the foregoing is the Bank's (as defined herein) cash collateral within the meaning of section 363(a) of the Bankruptcy Code (the "<u>Cash Collateral</u>"); <u>provided</u>, <u>however</u>, that the Debtors reserve the right to allege only that (i) certain cash on deposit as of the Petition Date in a concentration account maintained by the Affiliated Debtor at Wells Fargo Bank, N.A. is not Cash Collateral (which the Bank disputes); and (ii) Cash Collateral may not include any collateral that is not otherwise described in the Bank's UCC Financing Statements (as defined below), and the Bank reserves all rights, remedies and defenses in connection with the foregoing.

(ii).    <u>Prepetition Financing Documents</u>.  EOGH is a party to that certain Loan Agreement, dated as of June 15, 2007 (as amended, supplemented, or modified prior to the date hereof, including without limitation, that certain Second Amendment to Loan Documents dated as of September 12, 2012, the "<u>Prepetition Loan Agreement</u>," and together with the Loan Documents, as defined in the Prepetition Loan Agreement, the "<u>Prepetition Credit Documents</u>"), by and between East Orange General Hospital, Inc., as Borrower, and PNC Bank, N.A., (the "<u>Bank</u>").

Page:       5
Debtors:    East Orange General Hospital, Inc., *et al.*
Case No.:   15 – 31232 (VFP)
Caption:    Interim Order (A) Authorizing Postpetition Use of Cash Collateral, (B) Granting
            Adequate Protection to the Bank, (C) Modifying the Automatic Stay, (D) Scheduling
            a Final Hearing, and (E) Granting Related Relief

---

(iii).    Prepetition Obligations Amount. As of the Petition Date, the outstanding principal

amount of all Obligations (as defined in that certain Pledge Agreement dated as of September 10,

2012) owing by EOGH to the Bank under and in connection with the Prepetition Credit

Documents, including any swap obligations owing to the Bank, was not less than $7,525,941.69,

together with all accrued and accruing interest, charges, fees, costs and expenses (including

attorneys' fees and legal expenses) (collectively, the "Secured Obligations").    The Secured

Obligations constitute allowed, legal, valid, binding, enforceable and non-avoidable obligations of

EOGH and are not subject to any offset, defense, counterclaim, avoidance, recharacterization or

subordination pursuant to the Bankruptcy Code or any other applicable law, and neither of the

Debtors possess and shall not assert any claim, counterclaim, setoff or defense of any kind, nature

or description which would in any way affect the validity, enforceability and nonavoidability of

any of the Secured Obligations.

(iv).    Prepetition Liens and Collateral. As of the Petition Date, the Secured Obligations

were secured pursuant to the Prepetition Credit Documents by valid, perfected, enforceable and

non-avoidable first priority security interests and liens (the "Prepetition Liens") granted by EOGH

to the Bank upon the personal property and real estate Collateral as described in (a) those certain

UCC-1 financing statements filed of record by the Bank with the Department of Treasury, UCC

Section, for the State of New Jersey on or about November 22, 2006 and June 15, 2007 (together,

the "UCC Financing Statements") and (b) that certain land, building, fixtures and improvements

situated in East Orange, New Jersey at Block 221, Lot 44, as more fully described in that certain

Mortgage, Assignment of Rents, Security Agreement and Fixture Filing recorded in the Essex

Page:      6
Debtors:   East Orange General Hospital, Inc., *et al.*
Case No.:  15 – 31232 (VFP)
Caption:   Interim Order (A) Authorizing Postpetition Use of Cash Collateral, (B) Granting
           Adequate Protection to the Bank, (C) Modifying the Automatic Stay, (D) Scheduling
           a Final Hearing, and (E) Granting Related Relief

---

County Register's Office on July 29, 2015 at instrument number 15057617, Book 12566 at page

8940 (collectively, the "Prepetition Collateral"). The Prepetition Liens in and against the

Prepetition Collateral (i) are valid, binding, perfected, and enforceable liens and security interests

on all of the Prepetition Collateral, (ii) are not subject, pursuant to the Bankruptcy Code or other

applicable law, to avoidance, recharacterization, recovery, subordination, attack, offset,

counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind, (iii) are subject

and/or subordinate only to (x) the Carve-Out (as defined herein) and (y) any validly perfected and

unavoidable liens that exist on the Petition Date and are senior to the Prepetition Liens under

applicable non-bankruptcy law, but only to the extent such liens are permitted by the Prepetition

Credit Documents to be senior to the applicable Prepetition Liens, and (iv) constitute the legal,

valid, unavoidable and binding obligation of EOGH, enforceable in accordance with the terms of

the Prepetition Credit Documents.

(v).    Adequate Protection for the Bank. As a result of the Debtors' authorization to use

the Cash Collateral, the use, sale or lease of the other Prepetition Collateral, and the imposition of

the automatic stay, the Bank is entitled to receive adequate protection pursuant to sections 361,

362, and 363 of the Bankruptcy Code for and solely to the extent of any decrease in the value, from

and after the Petition Date, of EOGH's interests in the Prepetition Collateral (including the Cash

Collateral) resulting from the automatic stay and/or from the Debtors' use, sale, lease of the

Prepetition Collateral (including the Cash Collateral), or otherwise during the Cases. As adequate

protection, the Bank will receive the adequate protection described in this Interim Order (including

the adequate protection set forth in Paragraphs 8-10 hereof). In light of such adequate protection,

Page:        7
Debtors:    East Orange General Hospital, Inc., *et al.*
Case No.:    15 – 31232 (VFP)
Caption:    Interim Order (A) Authorizing Postpetition Use of Cash Collateral, (B) Granting
Adequate Protection to the Bank, (C) Modifying the Automatic Stay, (D) Scheduling
a Final Hearing, and (E) Granting Related Relief

---

the Bank has consented to the Debtors' use of the Cash Collateral, solely on the terms and

conditions set forth in this Interim Order. The adequate protection provided herein and other

benefits and privileges contained herein are consistent with and authorized by the Bankruptcy

Code and are necessary to obtain such consent.

(vi). <u>No Claims</u>. EOGH and the Affiliated Debtor, on behalf of each of them and their

respective estates and all of their past, present and future predecessors, successors, heirs,

subsidiaries and assigns (collectively, the "Releasors") agree that they hold no valid or enforceable

"claims" (as defined in the Bankruptcy Code), counterclaims, causes of action, defenses, or setoff

rights of any kind against the Bank and/or its officers, directors, members, shareholders and

affiliates arising out of, relating to, or in connection with the Prepetition Credit Documents, the

Secured Obligations, the Prepetition Collateral, the lending relationship with EOGH under the

Prepetition Credit Documents, any action or inaction of the Bank prior to the Petition Date under

the Prepetition Credit Documents or in connection with the filing of these Cases. The Releasors

hereby forever waive and release any and all "claims" (as defined in the Bankruptcy Code),

counterclaims, causes of action, defenses, or setoff rights against the Bank and/or its officers,

directors, members, shareholders and affiliates, and the Bank's attorneys, professionals,

accountants, investment bankers, consultant, agents, and other representatives (including each of

its respective officers, directors, partners, members, shareholders and affiliates), whether arising at

law or in equity, including any recharacterization, subordination, lender liability type claims,

avoidance, or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy

Code or under any other similar provisions of applicable state or federal law, arising out of,

Page:      8
Debtors:   East Orange General Hospital, Inc., *et al.*
Case No.:  15 – 31232 (VFP)
Caption:   Interim Order (A) Authorizing Postpetition Use of Cash Collateral, (B) Granting
           Adequate Protection to the Bank, (C) Modifying the Automatic Stay, (D) Scheduling
           a Final Hearing, and (E) Granting Related Relief

---

relating to, or in connection with, the Prepetition Credit Documents, the Secured Obligations, the Prepetition Collateral, the lending relationship with the Debtors under the Prepetition Credit Documents, any action or inaction of the Bank prior to the Petition Date in connection with the lending relationship under the Prepetition Credit Documents, or in connection with the filing of the Cases.

(vii).    Section 552(b); Section 506(c).    The Bank is entitled to a waiver of (a) any "equities of the case" exception under section 552(b) of the Bankruptcy Code and (b) the provisions of section 506(c) of the Bankruptcy Code.

F.    Necessity for Relief Requested; Immediate and Irreparable Harm.    The Debtors requested the entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2).  The Debtors have an immediate need to use the Cash Collateral to, among other things, preserve and maximize the value of the Debtors' assets, absent which immediate and irreparable harm will result to the Debtors, their estates, and their creditors.  The preservation and maintenance of the Debtors' assets and business are necessary to maximize values available for distribution to creditors.  Absent the Debtors' ability to use Cash Collateral, the Debtors would not have sufficient available sources of working capital or financing and would be unable to pay their operating expenses or maintain their assets, to the detriment of the Debtors' estates and creditors.  Accordingly, the relief requested in the Motion and the terms herein are (i) critical to the Debtors' ability to maximize the value of their chapter 11 estates, (ii) in the best interests of the Debtors and their estates, and (iii) necessary, essential, and appropriate to avoid immediate and irreparable harm to the Debtors and their assets.

Page:       9
Debtors:    East Orange General Hospital, Inc., *et al.*
Case No.:   15 – 31232 (VFP)
Caption:    Interim Order (A) Authorizing Postpetition Use of Cash Collateral, (B) Granting
            Adequate Protection to the Bank, (C) Modifying the Automatic Stay, (D) Scheduling
            a Final Hearing, and (E) Granting Related Relief

---

G.      <u>Good Cause</u>.  Good cause has been shown for entry of this Interim Order, and the

entry of this Interim Order is in the best interests of the Debtors and their estates and creditors.

Among other things, the relief granted herein will permit the Debtors to preserve and maintain the

value of their assets. The stipulated terms of the Debtors' use of Cash Collateral and proposed

adequate protection arrangements, as set forth in this Interim Order, are fair and reasonable under

the circumstances, and reflect the Debtors' exercise of prudent business judgment consistent with

their fiduciary duties.

H.      <u>Good Faith</u>.  The Debtors' use of Cash Collateral has been negotiated in good faith

and at arms' length among the Debtors and the Bank and the Bank's consent to the Debtors' use of

Cash Collateral shall be deemed to have been made in "good faith."

I.      <u>Notice</u>.  The Debtors have caused notice of the Motion, the relief requested therein,

and the Interim Hearing to be served by facsimile, email, overnight courier, or hand delivery on the

following parties (collectively, the "<u>Notice Parties</u>"): (i) the U.S. Trustee; (ii) holders of the twenty

(w0) largest unsecured claims on a consolidated basis against the Debtors; (iii) the Bank; (iv) the

cash management banks with which the Debtors maintain(s) bank accounts; (v) all parties who are

known, after reasonable inquiry, to have asserted a lien, encumbrance, or claim in and against the

Prepetition Collateral; (vi) the New Jersey Attorney General's Office; (vii) the United States

Attorney's Office for the District of New Jersey; (viii) the Internal Revenue Service; and (ix) all

parties who have filed a notice of appearance and request for service of papers pursuant to

Bankruptcy Rule 2002. Under the circumstances, the notice given by the Debtors of the Motion,

Page:       10
Debtors:    East Orange General Hospital, Inc., *et al.*
Case No.:   15 – 31232 (VFP)
Caption:    Interim Order (A) Authorizing Postpetition Use of Cash Collateral, (B) Granting
            Adequate Protection to the Bank, (C) Modifying the Automatic Stay, (D) Scheduling
            a Final Hearing, and (E) Granting Related Relief

---

the relief requested therein, and of the Interim Hearing complies with Bankruptcy Rules 2002,

4001(b), (c), and (d).

**BASED UPON THE STIPULATED TERMS SET FORTH HEREIN, AND**

**FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS HEREBY ORDERED,**

**ADJUDGED, AND DECREED:**

1.    Motion Granted.  The Motion is GRANTED to the extent provided herein on an

interim basis.  Any objection to the Motion to the extent not withdrawn or resolved is hereby

overruled.

2.    Authorization to Use Cash Collateral.  Until the Termination Date (as defined

below), the Debtors are authorized to use the Cash Collateral pursuant to the terms and

conditions provided herein.

3.    Budget.

(a)    Except as otherwise provided herein, the Debtors may only use Cash

Collateral for, among other things, (i) working capital requirements, (ii) general corporate

purposes, and (iii) the costs and expenses of administering the Cases (including making adequate

protection payments, the payment of the allowed fees and expenses of Case Professionals

(defined below), and payments under the Carve-Out as provided herein), in each case, pursuant

to and solely in accordance with the 13-week cash collateral budget attached as **Exhibit 1** hereto,

which Budget has been approved by the Bank (as the same may be updated in accordance with

the terms of this Interim Order, the "Budget").

Page:       11
Debtors:    East Orange General Hospital, Inc., *et al.*
Case No.:   15 – 31232 (VFP)
Caption:    Interim Order (A) Authorizing Postpetition Use of Cash Collateral, (B) Granting
            Adequate Protection to the Bank, (C) Modifying the Automatic Stay, (D) Scheduling
            a Final Hearing, and (E) Granting Related Relief

---

(b)     No less frequently than every four (4) weeks commencing on December 7, 2015, the Debtors shall deliver an updated Budget for the following 13-week period, inclusive of the week in which such updated Budget is delivered (each, a "Proposed Budget") to the Bank and its counsel. The Proposed Budget shall become the Budget upon the written consent of the Bank following its reasonable opportunity to review and comment on such Proposed Budget. Each Proposed Budget shall be of no force and effect unless and until it is approved by the Bank in accordance with the preceding sentence or otherwise approved by order of the Bankruptcy Court. Each agreed revised budget shall be filed with the Court.

(c)     Commencing on November 15, 2015, and continuing every week thereafter, the Debtors shall deliver to the Bank and its counsel a weekly variance report from the previous week comparing the actual receipts and disbursements of the Debtors with the receipts and disbursements in the Budget. The Debtors shall ensure that at no time shall disbursements exceed (i) the cumulative aggregate disbursements budgeted for any given calendar week and all budgeted calendar weeks prior to such calendar week, plus (ii) a 20% through December 7, 2015 (and 10% commencing on December 8, 2015 and continuing thereafter) variation in the aggregate from the sum of (X) the budgeted disbursements for such calendar week and (Y) the budgeted disbursements for the three (3) calendar weeks immediately preceding such calendar week, tested every week on a cumulative rolling four (4) week basis (such cumulative rolling basis to begin on the third week). The cumulative period will restart whenever a Proposed Budget becomes the Budget.

Page:      12
Debtors:   East Orange General Hospital, Inc., *et al.*
Case No.:  15 – 31232 (VFP)
Caption:   Interim Order (A) Authorizing Postpetition Use of Cash Collateral, (B) Granting
           Adequate Protection to the Bank, (C) Modifying the Automatic Stay, (D) Scheduling
           a Final Hearing, and (E) Granting Related Relief

---

(d)    During any Cure Period (as defined below), the Debtors may only use Cash Collateral to pay the following amounts and expenses solely in accordance with the respective Budget line items: (i) the Carve-Out; (ii) obligations for unpaid and accrued payroll and sale taxes; and (iii) any such other obligations subject to the prior written consent of the Bank. Notwithstanding anything to the contrary set forth in this Interim Order, the Cash Collateral and the Carve-Out may not be used: (i) to investigate (except as expressly provided herein), initiate, prosecute, join, or finance the initiation or prosecution of any claim, counterclaim, action, suit, arbitration, proceeding, application, motion, objection, defense, or other litigation of any type (A) against the Bank or seeking relief that would impair the rights and remedies of the Bank under the Prepetition Credit Documents or this Interim Order, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtors or any Creditors' Committee in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense, or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment determination, declaration, or similar relief that would impair the ability of the Bank to recover on the Secured Obligations or seeking affirmative relief against the Bank; (B) invalidating, setting aside, avoiding, or subordinating, in whole or in part, the Secured Obligations or Bank's liens or security interests in the Prepetition Collateral; or (C) for monetary, injunctive, or other affirmative relief against the Bank or its liens on or security interests in the Prepetition Collateral that would impair the ability of the Bank to assert or enforce any lien, claim, right, or security interest or to realize or recover on the Secured Obligations; (ii) for objecting to or challenging in

Page:        13
Debtors:    East Orange General Hospital, Inc., *et al.*
Case No.:   15 – 31232 (VFP)
Caption:    Interim Order (A) Authorizing Postpetition Use of Cash Collateral, (B) Granting
             Adequate Protection to the Bank, (C) Modifying the Automatic Stay, (D) Scheduling
             a Final Hearing, and (E) Granting Related Relief

---

any way the legality, validity, priority, perfection, or enforceability of the claims, liens, or

interests (including the Prepetition Liens) held by or on behalf of the Bank; (iii) for asserting,

commencing, or prosecuting any claims or causes of action whatsoever, including, without

limitation, any Avoidance Actions (as defined below) against the Bank; or (iv) for prosecuting an

objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount,

perfection, priority, or enforceability of any of the Prepetition Liens or any other rights or

interests of the Bank; *provided, however,* that no more than $20,000.00 of the proceeds of the

Prepetition Collateral may be used by any Creditors' Committee solely to investigate the

foregoing matters within the Challenge Period (as defined herein).

4.    <u>Effect of Stipulation on Third Parties.</u>

(a)    Subject to Paragraph 4(b) hereof, each stipulation, admission, and agreement

contained in this Interim Order including, without limitation, the Debtors' Stipulations, shall be

binding upon EOGH, the Affiliated Debtor, their estates and any successors thereto (including,

without limitation, any chapter 7 or chapter 11 trustee appointed or elected for EOGH or the

Affiliated Debtor) under all circumstances and for all purposes, and EOGH and the Affiliated

Debtor are deemed to have irrevocably waived and relinquished all Challenges (as defined

herein) as of the Petition Date.

(b)    Nothing in this Interim Order shall prejudice the rights of any Creditors'

Committee or any other party in interest, if granted standing by the Court, to seek, solely in

accordance with the provisions of this Paragraph 4, to assert claims against the Bank on behalf of

the Debtors or the Debtors' creditors or to otherwise challenge the Debtors' Stipulations,

Page:     14
Debtors:  East Orange General Hospital, Inc., *et al.*
Case No.: 15 – 31232 (VFP)
Caption:  Interim Order (A) Authorizing Postpetition Use of Cash Collateral, (B) Granting
          Adequate Protection to the Bank, (C) Modifying the Automatic Stay, (D) Scheduling
          a Final Hearing, and (E) Granting Related Relief

---

including, but not limited to those in relation to (i) the validity, extent, priority, or perfection of

the mortgages, security interests, and liens of the Bank, (ii) the validity, allowability, priority, or

amount of the Secured Obligations, or (iii) any liability of either the Bank with respect to

anything arising from the Prepetition Credit Documents. Any Creditors' Committee or any other

party in interest must, after obtaining standing approved by the Bankruptcy Court, commence a

contested matter or adversary proceeding raising such claim, objection, or challenge, including,

without limitation, any claim or cause of action against the Bank (each, a "Challenge") no later

than (a) with respect to any Creditors' Committee, the date that is sixty (60) days after the

Creditors' Committee's formation, or (b) with respect to other parties in interest, no later than the

date that is seventy-five (75) days after the entry of this Interim Order (collectively, the

"Challenge Period"). The Challenge Period may only be extended with the written consent of

the Bank or an order of the Bankruptcy Court, prior to the expiration of the Challenge Period.

Only those parties in interest who properly commence a Challenge within the applicable

Challenge Period may prosecute such Challenge. As to (x) any parties in interest, including any

Creditors' Committee, who fail to file a Challenge within the Challenge Period, or if any such

Challenge is filed and overruled, or (y) any and all matters that are not expressly the subject of a

timely Challenge: (1) any and all such Challenges by any party (including, without limitation,

any Creditors' Committee, any chapter 11 trustee, any examiner or any other estate

representative appointed in this Cases, or any chapter 7 trustee, any examiner or any other estate

representative appointed in any successor Case(s)), shall be deemed to be forever waived and

barred, (2) all of the findings, Debtors' Stipulations, waivers, releases, affirmations, and other

Page:       15
Debtors:    East Orange General Hospital, Inc., *et al.*
Case No.:   15 – 31232 (VFP)
Caption:    Interim Order (A) Authorizing Postpetition Use of Cash Collateral, (B) Granting
            Adequate Protection to the Bank, (C) Modifying the Automatic Stay, (D) Scheduling
            a Final Hearing, and (E) Granting Related Relief

---

stipulations hereunder as to the priority, extent, and validity as to the Bank's claims, liens, and

interests shall be of full force and effect and forever binding upon the Debtors' bankruptcy

estates and all creditors, interest holders, and other parties in interest in the Cases and any

successor Case(s), and (3) any and all claims or causes of action against the Bank shall be

released by the Debtors' estates, all creditors, interest holders, and other parties in interest in the

Cases and any successor Case(s).

       (c)    Nothing in this Interim Order vests or confers on any person (as defined in

the Bankruptcy Code), including any Creditors' Committee, standing or authority to pursue any

claim or cause of action belonging to EOGH, the Affiliated Debtor, and/or their respective

bankruptcy estates, including, without limitation, any Challenge with respect to the Prepetition

Credit Documents or the Secured Obligations.

       5.    <u>Termination Date</u>.  The Debtors' authorization, and the Bank's consent, to use

Cash Collateral shall terminate on the earliest to occur of (the "<u>Termination Date</u>"):

       (i)    the termination or non-consensual modification of this Interim Order or

       the failure of this Interim Order to be in full force and effect;

       (ii)    the entry of an order of this Court terminating the Debtors' right to use

       Cash Collateral;

       (iii)    the dismissal of one or more of the Cases or the conversion of one or more

       of the Cases to a case under chapter 7 of the Bankruptcy Code;

       (iv)    the appointment of a trustee or an examiner with expanded powers;

Page:        16
Debtors:     East Orange General Hospital, Inc., *et al.*
Case No.:    15 – 31232 (VFP)
Caption:     Interim Order (A) Authorizing Postpetition Use of Cash Collateral, (B) Granting
             Adequate Protection to the Bank, (C) Modifying the Automatic Stay, (D) Scheduling
             a Final Hearing, and (E) Granting Related Relief

---

    (v)    the expiration of the Cure Period following the delivery of a Default Notice (as defined herein) by the Bank, as set forth below; and

    (vi)    the first business day that is thirty five (35) days after the Petition Date (unless such period is extended by the Bank) if the Final Order in form and substance acceptable to the Bank has not been entered by the Court on or before such date.

6.    <u>Reporting Requirements/Access to Records</u>. The Debtors shall provide the Bank with all reporting and other information required to be provided to the Bank under the Prepetition Credit Documents. In addition to, and without limiting, whatever rights to access the Bank has under the Prepetition Credit Documents, subject to existing confidentiality agreements, upon reasonable notice, at reasonable times during normal business hours, the Debtors shall permit representatives, agents, and employees of the Bank to: (i) have access to and inspect the Debtors' assets; (ii) examine the Debtors' books and records, and (iii) discuss the Debtors' affairs, finances, and condition with the Debtors' officers, directors, partners, members and financial advisors.

7.    <u>Insurance</u>. At all times, the Debtors shall maintain casualty and loss insurance coverage for the Prepetition Collateral on substantially the same basis as maintained prior to the Petition Date.

8.    <u>Adequate Protection</u>.

(a)    <u>Adequate Protection Liens</u>. Subject to the Carve-Out in all respects and the terms of this Interim Order, pursuant to sections 361, 363(e) and 364 of the Bankruptcy Code,

Page:      17
Debtors:   East Orange General Hospital, Inc., *et al.*
Case No.:  15 – 31232 (VFP)
Caption:   Interim Order (A) Authorizing Postpetition Use of Cash Collateral, (B) Granting
           Adequate Protection to the Bank, (C) Modifying the Automatic Stay, (D) Scheduling
           a Final Hearing, and (E) Granting Related Relief

---

and in consideration of the stipulations and consents set forth herein, as adequate protection for: (i) any postpetition use of Cash Collateral; (ii) the use, sale, lease of all other Prepetition Collateral and the diminution in value thereof, and (iii) the imposition of the automatic stay (the "Adequate Protection Obligations"), the Debtors hereby grant to the Bank additional and replacement valid, binding, enforceable, non-avoidable, and automatically perfected, *nunc pro tunc* to the Petition Date, postpetition security interests in and liens (the "Adequate Protection Liens"), without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents, on all post-petition property, whether now owned or hereafter acquired or existing and wherever located, of the Debtors and the Debtors' "estates" (as created pursuant to section 541(a) of the Bankruptcy Code), to the extent of and with the same priority as existed on the Petition Date, and all products, proceeds and supporting obligations of the foregoing, whether in existence on the Petition Date or thereafter created, acquired, or arising and wherever located, and, subject to the entry of the Final Order, the proceeds of all causes of action under sections 502(d), 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code (collectively, the "Avoidance Actions") (collectively, with the Avoidance Actions, the "Collateral").[4]

(b)      Priority of Adequate Protection Liens.

(i)      Subject to the Carve-Out (as defined below), the Adequate Protection Liens shall be (a) first priority perfected liens on all of the Collateral that is not

---

[4] For purposes of this Interim Order, all references to the defined term "Collateral" shall not include Avoidance Actions unless and until so granted in the context of the Final Order.

Page:       18
Debtors:    East Orange General Hospital, Inc., *et al.*
Case No.:   15 – 31232 (VFP)
Caption:    Interim Order (A) Authorizing Postpetition Use of Cash Collateral, (B) Granting
            Adequate Protection to the Bank, (C) Modifying the Automatic Stay, (D) Scheduling
            a Final Hearing, and (E) Granting Related Relief

---

otherwise encumbered by validly perfected, non-avoidable security interests as of the Petition

Date, (b) first priority perfected liens on all of the Collateral as to which the Bank had a valid and

perfected first priority lien as of the Petition Date, even if such Collateral is subject to a validly

perfected lien that is junior to the lien of the Bank, and (c) junior perfected liens on all Collateral

that is subject to a validly perfected lien with priority over the Bank's liens as of the Petition

Date.

    (ii)  Subject to the Carve-Out in all respects and the terms of this

Interim Order, the Adequate Protection Liens shall be enforceable against and binding upon the

Debtors, their estates, and any successors thereto.

    (c)  <u>Carve-Out</u>. For purposes hereof, the "<u>Carve-Out</u>" shall mean the aggregate

amount of:

    (i)  all fees required to be paid to the Clerk of the Bankruptcy Court and to the

U.S. Trustee under section 1930(a) of title 28 of the United States Code plus

interest at the statutory rate;

    (ii)  subject to subparagraph (d) below, all allowed and unpaid professional

fees, expenses and disbursements incurred prior to the Termination Date

(whenever allowed) by (x) estate professionals retained by order of the Court,

including professionals of the Debtors employed under sections 327, 328 or 363

of the Bankruptcy Code ("<u>Debtors' Professionals</u>") up to the amount provided for

such Debtors' Professionals for the such period in the Budget and (y)

professionals of any Creditors' Committee retained by order of the Court

Page:       19
Debtors:    East Orange General Hospital, Inc., *et al.*
Case No.:   15 – 31232 (VFP)
Caption:    Interim Order (A) Authorizing Postpetition Use of Cash Collateral, (B) Granting
            Adequate Protection to the Bank, (C) Modifying the Automatic Stay, (D) Scheduling
            a Final Hearing, and (E) Granting Related Relief

---

("Creditors' Committee Professionals" and, together with the Debtors'

Professionals, the "Case Professionals"), up to the amount provided for such

Creditors' Committee Professionals as set forth in the Budget (this clause (ii)

being referred to as the "Pre-Termination Date Carve-Out"); *provided, however,*

that to the extent that the Termination Date occurs during any given month, the

fees set forth in the Budget shall be prorated for the number of days elapsed; and

(iii) the allowed and unpaid professional fees, expenses and disbursements under

sections 327 or 1103(a) of the Bankruptcy Code incurred on or after the

Termination Date, in the aggregate not to exceed $100,000.00 for all of the

Debtors' Professionals (this clause (iii) being referred to as the "Post-Termination

Date Carve-Out").

For the avoidance of doubt, the Carve-Out shall be paid solely from the proceeds of the Collateral

and nothing in this Interim Order or otherwise shall be construed to obligate the Bank to directly

pay or otherwise satisfy the Carve-Out or to guarantee that the Debtors have sufficient funds to

satisfy the Carve-Out.

(d)   Further Provisions Regarding Professional Fees.   Nothing herein shall be

construed as a consent to the allowance of any professional fees or expenses of any Case

Professionals or shall affect the right of the Bank to object to the allowance and payment of such

fees and expenses.   The Bank shall not be responsible for the payment or reimbursement of any

fees or disbursements of any Case Professionals incurred in connection with the Cases or any

successor case(s) under any chapter of the Bankruptcy Code.   Nothing in this Interim Order or

Page:      20
Debtors:   East Orange General Hospital, Inc., *et al.*
Case No.:  15 – 31232 (VFP)
Caption:   Interim Order (A) Authorizing Postpetition Use of Cash Collateral, (B) Granting
           Adequate Protection to the Bank, (C) Modifying the Automatic Stay, (D) Scheduling
           a Final Hearing, and (E) Granting Related Relief

---

otherwise shall be construed to obligate the Bank to directly pay compensation to or to reimburse

expenses of any Case Professional or to guarantee that the Debtors have sufficient funds to pay

such compensation or reimbursement.

9.     Adequate Protection Superpriority Claim.  Subject to the Carve-Out in all respects

and the terms of this Interim Order, as further adequate protection for and to the extent permitted

by sections 503(b) and 507(b) of the Bankruptcy Code, the Bank is hereby granted an allowed

administrative expense claim in the Cases ahead of and senior to any and all other administrative

expense claims in such Cases to the extent of any postpetition diminution in value of the

Collateral, including Cash Collateral (the "Adequate Protection Superpriority Claim").

10.    Other Adequate Protection.  As further adequate protection: (i) the Bank shall be

entitled to receive principal and interest on account of the outstanding Secured Obligations,

which shall be accrued and payable and paid in accordance with the amounts, time and manner

set forth in the Prepetition Credit Documents, which is $36,000 per calendar month for the

interim period and (ii) the Debtors shall pay, without further Court order, the reasonable and

documented fees, costs and expenses, whether incurred before or after the Petition Date, of the

Bank, including reasonable and documented attorneys' and financial advisors' fees and expenses,

to the extent provided under the Prepetition Credit Documents (including, without limitation, the

fees and expenses of counsel to the Bank Blank Rome LLP) (the "Adequate Protection Fees").

After delivery of a monthly summary statement of any requested Adequate Protection Fees

(which shall include the total number of hours billed by attorney or other professional and a

summary description of services) to counsel for the Debtors, the U.S. Trustee, and any Creditors'

Page:      21
Debtors:   East Orange General Hospital, Inc., *et al.*
Case No.:  15 – 31232 (VFP)
Caption:   Interim Order (A) Authorizing Postpetition Use of Cash Collateral, (B) Granting
           Adequate Protection to the Bank, (C) Modifying the Automatic Stay, (D) Scheduling
           a Final Hearing, and (E) Granting Related Relief

---

Committee, the Debtors shall pay such fees, costs and expenses within ten (10) business days of delivery thereof. All such amounts paid as adequate protection are deemed permitted uses of Cash Collateral. In the event the Debtors, the U.S. Trustee and/or any Creditors' Committee dispute(s) any monthly summary statement or portion thereof, it/they must transmit a written notice to the Bank and its counsel within seven (7) business days of the delivery of the relevant monthly summary statement setting forth the precise grounds of dispute. The parties shall engage in good faith discussions in an effort to resolve any such dispute and, to the extent that the parties are unable to expeditiously resolve the same, the dispute shall be presented to the Bankruptcy Court for its adjudication. Notwithstanding any timely dispute of any portion of a summary monthly statement, the Debtors shall pay any portion thereof that is not the subject of a timely written dispute notice.

11.    <u>Modification of Automatic Stay</u>. The automatic stay under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to: (a) permit the Debtors to provide the adequate protection provided herein; (b) permit the Debtors to perform such acts as the Bank may reasonably request to assure the perfection and priority of the liens granted herein; and (c) authorize the Debtors to make payments in accordance with the terms of this Interim Order.

12.    <u>Cash Management</u>. The Debtors shall maintain their current cash management system during the period that this Interim Order is in effect.

13.    <u>Disposition of Collateral</u>. The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral outside of the ordinary course of business

Page:     22
Debtors:  East Orange General Hospital, Inc., *et al.*
Case No.: 15 – 31232 (VFP)
Caption:  Interim Order (A) Authorizing Postpetition Use of Cash Collateral, (B) Granting
          Adequate Protection to the Bank, (C) Modifying the Automatic Stay, (D) Scheduling
          a Final Hearing, and (E) Granting Related Relief

---

without the prior written consent of the Bank unless such sale, transfer, lease, encumbrance or

other disposition is approved by the Bankruptcy Court and results in the full and indefeasible

payment in cash of the Bank's allowed secured claim, including, without limitation, the Bank's

Secured Obligations, as and to the extent allowed (and which are not disputed by the Debtors)

and, with respect to any letters of credit, either replacement thereof or the posting of cash

collateral in the amount of 102% of such letters of credit.  Unless otherwise agreed to by the

Bank in writing and except as expressly provided herein, all proceeds of any sale or other

disposition of the Collateral shall be paid over to the Bank as and to the extent required by this

Interim Order.

    14.    <u>Events of Default</u>.  The occurrence of any of the following events, unless waived

in writing by the Bank, shall constitute an event of default (each, an "<u>Event of Default</u>"):

    (a)    the Debtors' continued use of Cash Collateral after the Termination Date

without the written consent of the Bank;

    (b)    the Debtors' failure to (i) comply with the Budget, subject in each case to

any permitted variances permitted hereunder (other than for Professional

Fees), or (ii) perform, in any material respect, any of its obligations under

this Interim Order, including. but not limited to, the Debtors' failure to

make any payments required under Paragraph 10 hereof;

    (c)    the Debtors obtaining credit or incurring indebtedness without the consent

of the Bank that is (i) secured by a security interest, mortgage or lien on all

or any portion of the Collateral which is equal, senior to, or junior to any

Page:      23
Debtors:   East Orange General Hospital, Inc., *et al.*
Case No.:  15 – 31232 (VFP)
Caption:   Interim Order (A) Authorizing Postpetition Use of Cash Collateral, (B) Granting
           Adequate Protection to the Bank, (C) Modifying the Automatic Stay, (D) Scheduling
           a Final Hearing, and (E) Granting Related Relief

---

security interest, mortgage or lien of the Bank in the Prepetition Collateral or Collateral, or (ii) entitled to priority administrative status which is equal to or senior to that granted to the Bank during the interim period;

(d)   any lien or security interest purported to be created under the Prepetition Credit Documents shall cease to be, shall be asserted by the Debtors not to be, or shall otherwise be determined by the Bankruptcy Court not to be, a valid and perfected lien on or security interest in any Prepetition Collateral, with the priority required by the Prepetition Credit Documents or herein;

(e)   dismissal of one or more of the Cases, conversion of one or more of the Cases to chapter 7, or the appointment of a chapter 11 trustee or examiner with expanded powers in any or all of the Cases;

(f)   an order shall be entered staying, reversing, vacating, amending, or rescinding any of the terms of this Interim Order without the consent of the Bank;

(g)   The Debtors shall have failed to consummate a sale of all or substantially all of their assets and indefeasibly paid and satisfied in full in cash the Secured Obligations owing to the Bank, as and to the extent allowed (but which are not disputed by the Debtors), including with respect to any letters of credit, either replacement thereof or the posting of cash collateral in the amount of 102% of such letters of credit, on or before a date that is

-23-

Page:      24
Debtors:   East Orange General Hospital, Inc., *et al.*
Case No.:  15 – 31232 (VFP)
Caption:   Interim Order (A) Authorizing Postpetition Use of Cash Collateral, (B) Granting
           Adequate Protection to the Bank, (C) Modifying the Automatic Stay, (D) Scheduling
           a Final Hearing, and (E) Granting Related Relief

---

mutually agreed upon between and among the Bank and the Debtors by the time of the Final Hearing and set forth in the Final Order;

(h)     the entry of an order or judgment by this Court or any other court:  (i) modifying, limiting, subordinating, or avoiding the priority of the obligations of the Debtors under this Interim Order, the obligations of the Debtors under the Prepetition Loan Agreement and the other Prepetition Credit Documents, or the perfection, priority, or validity of the Prepetition Liens, or the Adequate Protection Liens; (ii) imposing, surcharging, or assessing against the Bank's claims, the Prepetition Collateral, or the Collateral any costs or expenses, whether pursuant to section 506(c) of the Bankruptcy Code or otherwise; and (iii) impairing the Bank's right to credit bid, unless otherwise ordered by the Bankruptcy Court under and pursuant to section 363(k) of the Bankruptcy Code; and

(i)     any Cash Collateral or the Carve-Out is used, whether or not pursuant to Court order, in a manner prohibited by this Interim Order, including Paragraph 3(d) hereof.

15.     Exercise of Remedies.  Upon the occurrence and at any time during the continuation of an Event of Default, the Bank may deliver a written notice of an Event of Default (a "Default Notice"), and the automatic stay is hereby vacated to allow the delivery of any Default Notices, which Default Notice shall be given by email, facsimile, or other electronic means to counsel to the Debtors, the U.S. Trustee, and counsel to any Creditors' Committee.

Page:      25
Debtors:   East Orange General Hospital, Inc., *et al.*
Case No.:  15 – 31232 (VFP)
Caption:   Interim Order (A) Authorizing Postpetition Use of Cash Collateral, (B) Granting
           Adequate Protection to the Bank, (C) Modifying the Automatic Stay, (D) Scheduling
           a Final Hearing, and (E) Granting Related Relief

---

The Debtors shall have five (5) business days from the date of delivery of such Default Notice to cure such Event of Default (the "Cure Period") or to seek relief from the Court. Except as expressly set forth in Paragraph 3 above, the Debtors' right to use, and the Bank's consent to the Debtors' use of, Cash Collateral shall cease as of the expiration of the Cure Period. Upon the expiration of the Cure Period, the automatic stay shall be deemed terminated and the Bank shall be entitled to take any action and exercise all rights and remedies provided to it by this Interim Order, the Prepetition Credit Documents, and/or applicable law as the Bank may deem appropriate in its sole discretion to, among other things, proceed against and realize upon the assets or properties of Debtors' estates (including the Collateral) upon which the Bank has been granted a lien, security interest and/or mortgage. The Debtors and/or any estates' representative shall cooperate and make all information and documents readily available and turned over to the Bank to realize against the Collateral. Notwithstanding anything to the contrary herein, if an Event of Default is triggered under Paragraph 14(c) by virtue of the Debtors (or either of them) seeking Bankruptcy Court authorization to encumber any of the Prepetition Collateral or Collateral with a junior lien(s) (a "Junior Lien Encumbrance Request"), then, in such event, the Debtors' right to use of Cash Collateral under and pursuant to this Interim Order shall terminate upon the earlier to occur of (i) the entry of a Final Order authorizing the Debtors' continued use of Cash Collateral, or (ii) the hearing date to consider the Junior Lien Encumbrance Request.

16.     Reversal, Modification, Vacatur, or Stay. Any reversal, modification, vacatur, or stay of any or all of the provisions of this Interim Order shall not affect the validity or enforceability of any Adequate Protection Lien, or any claim, lien, security interest, or priority

Page:     26
Debtors:  East Orange General Hospital, Inc., *et al.*
Case No.: 15 – 31232 (VFP)
Caption:  Interim Order (A) Authorizing Postpetition Use of Cash Collateral, (B) Granting
          Adequate Protection to the Bank, (C) Modifying the Automatic Stay, (D) Scheduling
          a Final Hearing, and (E) Granting Related Relief

---

authorized or created hereby with respect to any Adequate Protection Lien, incurred prior to the

effective date of such reversal, modification, vacatur, or stay.  Notwithstanding any reversal,

modification, vacatur, or stay (a) this Interim Order shall govern, in all respects, any use of Cash

Collateral or Adequate Protection Lien or Adequate Protection Superpriority Claim incurred by

the Debtors prior to the effective date of such reversal, modification, vacatur, or stay, and (b) the

Bank shall be entitled to all the benefits and protections granted by this Interim Order with

respect to any such use of Cash Collateral or such Adequate Protection Lien or Adequate

Protection Superpriority Claim incurred by the Debtors.

17.    <u>Reservation of Rights</u>.  Notwithstanding anything to the contrary herein, the entry

of this Interim Order and the transactions contemplated hereby shall not constitute an admission

nor be deemed an admission by the Bank that absent its consent to the Debtors' use of Cash

Collateral under this Interim Order their interests in the Prepetition Collateral would be

adequately protected.  Except as otherwise expressly set forth herein, the entry of this Interim

Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or

otherwise impair:  (a) the Bank's rights to seek any other or supplemental relief in respect of the

Debtors, including the right to seek additional adequate protection; (b) any of the Bank under the

Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of the

Bank to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii)

request dismissal of one or more of the Cases, conversion of one or more of the Cases to a

case(s) under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded

powers, (iii) seek to propose, subject to the provisions of section 1121 of the Bankruptcy Code, a

Page:       27
Debtors:   East Orange General Hospital, Inc., *et al.*
Case No.:   15 – 31232 (VFP)
Caption:   Interim Order (A) Authorizing Postpetition Use of Cash Collateral, (B) Granting
            Adequate Protection to the Bank, (C) Modifying the Automatic Stay, (D) Scheduling
            a Final Hearing, and (E) Granting Related Relief

---

chapter 11 plan or plans; or (c) any other rights, claims, or privileges (whether legal, equitable, or

otherwise) of the Bank.

18.    No Waiver for Failure to Seek Relief. The failure or delay of the Bank to seek

relief or otherwise exercise any of their rights and remedies under this Interim Order, the

Prepetition Loan Agreement or the other Prepetition Credit Documents, or applicable law, as the

case may be, shall not constitute a waiver of any rights hereunder, thereunder, or otherwise, by

the Bank.

19.    Section 507(b) Reservation.    Nothing herein shall impair or modify the

application of section 507(b) of the Bankruptcy Code in the event that the adequate protection

provided to the Bank hereunder is insufficient to compensate for the Adequate Protection

Obligations during the Cases. Nothing contained herein shall be deemed a finding by the Court,

or an acknowledgment by the Bank that the adequate protection granted herein does in fact

adequately protect the Bank against any diminution in value of its interests in and against the

Prepetition Collateral (including the Cash Collateral).

20.    Section 552(b) Waiver. The Bank shall be entitled to all of the rights and benefits

of Bankruptcy Code section 552(b) and the "equities of the case" exception shall not apply.

21.    Section 506(c) Waiver. The Debtors and their estates waive any claim under

Bankruptcy Code section 506(c) for any costs and expenses incurred in connection with the

preservation, protection or enhancement of, or realization by the Bank upon the Prepetition

Collateral.

Page:      28
Debtors:   East Orange General Hospital, Inc., *et al.*
Case No.:  15 – 31232 (VFP)
Caption:   Interim Order (A) Authorizing Postpetition Use of Cash Collateral, (B) Granting
           Adequate Protection to the Bank, (C) Modifying the Automatic Stay, (D) Scheduling
           a Final Hearing, and (E) Granting Related Relief

---

22.    No Marshalling/Application of Proceeds. In no event shall the Bank be subject to the equitable doctrine of "marshalling" or any other similar doctrine with respect to any of the Prepetition Collateral.

23.    Good Faith. Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, pursuant to sections 105, 361, 363, and 364 of the Bankruptcy Code, the Debtors and the Bank are hereby found to be entities that have acted in "good faith" in connection with the negotiation and entry of this Interim Order and are entitled to the protections afforded by sections 363(m) of the Bankruptcy Code.

24.    No Third Party Rights. Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

25.    No Liability to Third Parties. In permitting the use of the Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Interim Order, the bank shall not be deemed to be in control of the operations of EOGH or the Affiliated Debtor or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of EOGH or the Affiliated Debtor (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute), nor shall they owe any fiduciary duty to EOGH or the Affiliated Debtor, their creditors or estates, or shall constitute or be deemed to constitute a joint venture or partnership with EOGH or the Affiliated Debtor. Furthermore, nothing in this Interim Order shall in any way be construed or interpreted to impose

Page:       29
Debtors:    East Orange General Hospital, Inc., *et al.*
Case No.:   15 – 31232 (VFP)
Caption:    Interim Order (A) Authorizing Postpetition Use of Cash Collateral, (B) Granting
            Adequate Protection to the Bank, (C) Modifying the Automatic Stay, (D) Scheduling
            a Final Hearing, and (E) Granting Related Relief

---

upon the Bank any liability for any claims arising from the prepetition or postpetition activities of EOGH, the Affiliated Debtor, and/or their affiliates (as defined in Bankruptcy Code section 101(2)).

26.    Proofs of Claim. The Bank will not be required to file proofs of claim in any of the Cases or any converted case(s) with respect to any obligations under the Prepetition Credit Documents or any other claims or liens granted hereunder or created hereby.

27.    Binding Effect of Final Order. The provisions of this Interim Order shall be binding upon all parties in interest in the Cases, including the Bank, any statutory committees that may be appointed in any Case, and EOGH, the Affiliated Debtor and their respective successors and assigns and shall inure to the benefit of the Bank and EOGH, the Affiliated Debtor and their respective successors and assigns. Except as provided forth in Paragraph 4 hereof, to the extent permitted by applicable law, this Interim Order shall bind any trustee hereafter appointed or elected for the estate of EOGH, the Affiliated Debtor, whether in any of the Cases or in the event of the conversion of any of the Cases to a liquidation under chapter 7 of the Bankruptcy Code. Such binding effect is a benefit of the Bank's bargain in connection with the Debtors' use of Cash Collateral and is an integral part of this Interim Order. Any payments to be made by the Debtors under any order (including any "First Day" order) shall be made in accordance with this Interim Order and the Budget (subject to any permitted variances).

28.    Survival. The provisions of this Interim Order and any actions taken pursuant hereto shall survive the entry of any order: (i) confirming any chapter 11 plan, (ii) converting the Case or any of the Cases to a chapter 7 case(s), or (iii) dismissing the Case or any of the Cases.

Page:      30
Debtors:   East Orange General Hospital, Inc., *et al.*
Case No.:  15 – 31232 (VFP)
Caption:   Interim Order (A) Authorizing Postpetition Use of Cash Collateral, (B) Granting
           Adequate Protection to the Bank, (C) Modifying the Automatic Stay, (D) Scheduling
           a Final Hearing, and (E) Granting Related Relief

---

The terms and provisions of this Interim Order, including, for the avoidance of doubt, the

provisions in Paragraph 4 hereof, as well as the adequate protection granted pursuant to this

Interim Order shall continue in full force and effect notwithstanding the entry of any of the

foregoing orders, and such claims and liens shall maintain their priority as provided by this

Interim Order and the Prepetition Credit Documents and the maximum extent permitted by law

until all of the Secured Obligations are indefeasibly paid and satisfied in full in cash.

29.    Effect of Dismissal.  If any or all of the Cases are dismissed or converted, then

neither the entry of this Interim Order nor the dismissal or conversion of the Case or any of the

Cases shall affect the rights of the Bank (to the extent of the adequate protection provided

hereunder) under the Prepetition Credit Documents or this Interim Order, and all rights and

remedies thereunder of the Bank (to the extent of adequate protection provided hereunder) shall

remain in full force and effect as if the Case or any of the Cases had not been dismissed or

converted.  If an order dismissing any of the Cases is entered, such order shall provide (in

accordance with sections 105 and 349 of the Bankruptcy Code) that (i) the adequate protection

granted to and conferred upon the Bank shall continue in full force and effect and shall maintain

their priorities as provided in this Interim Order until such Adequate Protection Obligation has

been satisfied, (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the

purpose of enforcing the adequate protection provided for herein, and (iii) any hearing on a

motion to dismiss any of the Cases shall require at least twenty one (21) days prior notice.  The

provisions of this Interim Order, and any actions taken pursuant hereto, shall survive the entry of

and shall govern with respect to any conflict with any order that may be entered confirming any

Page:      31
Debtors:   East Orange General Hospital, Inc., *et al.*
Case No.:  15 – 31232 (VFP)
Caption:   Interim Order (A) Authorizing Postpetition Use of Cash Collateral, (B) Granting
           Adequate Protection to the Bank, (C) Modifying the Automatic Stay, (D) Scheduling
           a Final Hearing, and (E) Granting Related Relief

---

chapter 11 plan, dismissing the Case or any of the Cases or converting the Case or any of the

Cases from chapter 11 to chapter 7.

30.    <u>Findings of Fact and Conclusions of Law</u>. This Interim Order shall constitute

findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro

tunc* to the Petition Date immediately upon the entry thereof. To the extent that any findings of

fact are determined to be conclusions of law, such findings of fact shall be adopted as such; and

to the extent that any conclusions of law are determined to be findings of fact, such conclusions

of law shall be adopted as such.

31.    <u>Order Effective Upon Entry</u>.   Notwithstanding any applicability of any

Bankruptcy Rules, the terms and conditions of this Interim Order shall be immediately effective

and enforceable upon its entry.

32.    <u>Retention of Jurisdiction</u>. The Court has and will retain jurisdiction and power to

enforce this Interim Order in accordance with its terms and to adjudicate any and all matters

arising from or related to the interpretation or implementation of this Interim Order.

33.    <u>Final Hearing</u>. A hearing on the Debtors' request for a Final Order approving the

Motion is scheduled for December 1, 2015, at 2:30 p.m. (prevailing Eastern time) before this

Court. Within three (3) business days after entry of this Interim Order, the Debtors shall serve,

or cause to be served, by first class mail or other appropriate method of service, a copy of the

Motion (to the extent the Motion was not previously served on a party) and this Interim Order on

(i) the Notice Parties, and (ii) counsel to any Creditors' Committee. Any responses or objections

to the Motion shall be made in writing, conform to the applicable Bankruptcy Rules and Local

Page:       32
Debtors:    East Orange General Hospital, Inc., *et al.*
Case No.:   15 – 31232 (VFP)
Caption:    Interim Order (A) Authorizing Postpetition Use of Cash Collateral, (B) Granting
            Adequate Protection to the Bank, (C) Modifying the Automatic Stay, (D) Scheduling
            a Final Hearing, and (E) Granting Related Relief

---

Rules, be filed with the Bankruptcy Court, set forth the name of the objecting party, the basis for

the objection, and the specific grounds therefor, and be served so as to be actually received no

later than November 25, 2015, at 12 noon (prevailing Eastern time) by the following parties:

(a) counsel for the Debtors, Lowenstein Sandler LLP, Attn: Bruce Buechler, Esq., 65 Livingston

Avenue, Roseland, NJ 07068, (b) the U.S. Trustee for the District of New Jersey; and (c) counsel

for the Bank, Blank Rome LLP, Attn: Regina Stango Kelbon, One Logan Square, Philadelphia,

PA 19103, kelbon@blankrome.com.

**<u>EXHIBIT 1</u>**


**[The Budget]**

East Orange General Hospital, Inc.
Amended Budget as of 11/12/15
$ in thousands

| | | | | | | POST PETITION | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Beginning / Week Ending | Week 1 Actual 11-Nov 14-Nov | Week 2 Forecast 15-Nov 21-Nov | Week 3 Forecast 22-Nov 28-Nov | Week 4 Forecast 29-Nov 5-Dec | Week 5 Forecast 6-Dec 12-Dec | Week 6 Forecast 13-Dec 19-Dec | Week 7 Forecast 20-Dec 26-Dec | Week 8 Forecast 27-Dec 2-Jan | Week 9 Forecast 3-Jan 9-Jan | Week 10 Forecast 10-Jan 16-Jan | Week 11 Forecast 17-Jan 23-Jan | Week 12 Forecast 24-Jan 30-Jan | Week 13 Forecast 31-Jan 6-Feb |
| **Receipts** | | | | | | | | | | | | | |
| *Patient Receipts* | | | | | | | | | | | | | |
| Medicare - IP | - | - | 898 | - | 898 | - | 898 | - | 898 | - | 898 | - | 898 |
| Medicare - Other - OP | - | 103 | 103 | 103 | 103 | 103 | 103 | 103 | 103 | 103 | 103 | 103 | 103 |
| Medicaid - IP | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 |
| Medicaid - OP | 73 | 73 | 73 | 73 | 73 | 73 | 73 | 73 | 73 | 73 | 73 | 73 | 73 |
| Other Rec | 265 | 550 | 550 | 550 | 550 | 550 | 550 | 550 | 550 | 550 | 550 | 550 | 550 |
| **Total Patient Receipts** | 458 | 846 | 1,744 | 846 | 1,744 | 846 | 1,744 | 846 | 1,744 | 846 | 1,744 | 846 | 1,744 |
| *Other Receipts* | | | | | | | | | | | | | |
| Charity Care Subsidy | - | 643 | - | - | - | - | - | - | - | - | - | - | - |
| DSRIP - formerly - Hospital Relief Subsidy | - | - | 95 | - | - | - | 1,266 | 95 | - | - | - | - | - |
| Mental Health Subsidy | - | 95 | - | - | - | - | - | - | - | 95 | - | 95 | - |
| Other | 31 | 40 | 280 | 40 | 40 | 40 | 95 | 280 | 40 | 40 | 40 | 40 | 280 |
| **Total Other Receipts** | 31 | 778 | 375 | 40 | 40 | 886 | 1,431 | 375 | 40 | 886 | 135 | 135 | 280 |
| **Total Receipts** | 489 | 1,624 | 2,119 | 886 | 1,784 | 886 | 3,165 | 1,221 | 1,784 | 1,784 | 1,879 | 981 | 2,024 |
| **Operating Disbursements** | | | | | | | | | | | | | |
| Base Payroll & Payroll Tax | (14) | (1,523) | (150) | (1,523) | (150) | (1,525) | (150) | (1,525) | (150) | (1,525) | (150) | (1,525) | (150) |
| Base Payroll Increase - 3% | - | (51) | - | (51) | - | (51) | - | (51) | - | (51) | - | (51) | - |
| Other Payroll Related Disbursements | - | (300) | - | - | - | - | - | - | - | - | - | - | - |
| **Total Payroll** | (14) | (1,876) | (150) | (1,376) | (150) | (1,576) | (150) | (1,576) | (150) | (1,576) | (150) | (1,576) | (150) |
| Physicians | (168) | (267) | (167) | (217) | (217) | (168) | (168) | (168) | (168) | (168) | (168) | (168) | (168) |
| Insurance | (158) | (174) | (158) | (186) | (140) | (156) | (140) | (168) | (168) | (168) | (168) | (610) | (140) |
| Medical Supplies/Food/Drugs | (269) | (269) | (269) | (269) | (269) | (269) | (269) | (269) | (269) | (269) | (269) | (269) | (269) |
| Utilities | - | - | - | (150) | - | - | - | - | - | - | - | - | - |
| Leases | - | - | - | - | - | - | (48) | - | - | - | - | - | - |
| Other Operating Disbursements | (240) | (294) | (180) | (180) | (180) | (180) | (180) | (180) | (180) | (180) | (180) | (180) | (234) |
| Third Party Paybacks | (18) | (76) | (76) | (76) | (76) | (76) | (76) | (76) | (76) | (76) | (76) | (76) | (76) |
| **Total Operating Disbursements** | (667) | (2,956) | (1,000) | (2,654) | (1,032) | (2,455) | (1,030) | (2,637) | (983) | (2,409) | (1,063) | (3,079) | (1,337) |
| **Non-Operating Disbursements** | | | | | | | | | | | | | |
| Chapter 11 Professional Fees | (163) | (163) | (163) | (163) | (163) | (163) | (163) | (163) | (163) | (163) | (163) | (163) | (163) |
| Ordinary Course Professionals | - | - | - | (117) | - | - | (117) | (117) | - | - | - | - | (117) |
| Critical Vendor Payments | - | (109) | (150) | - | - | - | (150) | - | - | - | - | - | - |
| Utility Deposit | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Capital Expenditures | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Adequate Protection Payments | - | - | (18) | (18) | - | - | (18) | (18) | - | (14) | - | (18) | (18) |
| DIP Facility Fees & Interest | - | - | - | - | - | - | - | - | - | (14) | - | (25) | (10) |
| **Total Non-Operating Disbursements** | (163) | (263) | (331) | (298) | (163) | (163) | (331) | (298) | (638) | (178) | (103) | (183) | (308) |
| **Net Cash Flow** | (541) | (1,596) | 788 | (2,066) | 589 | (1,702) | 7 | (1,714) | 638 | (1,701) | 655 | (2,304) | 379 |
| **Beginning Cash Balance** | 3,565 | 3,996 | 2,400 | 3,187 | 1,121 | 1,710 | 7 | 1,811 | 97 | 735 | (966) | 753 | (1,550) |
| Plus: Outstanding Checks (pre petition) | 572 | | | | | | | | | | | | |
| Less: Change in Outstanding Checks (post petition) | (541) | (1,596) | 788 | (2,066) | 589 | (1,702) | 7 | (1,714) | 638 | (1,701) | 655 | (2,304) | 379 |
| Change in Cash | | | | | | | | | | | | | |
| **Ending Cash Balance, Bank** | 3,996 | 2,400 | 3,187 | 1,121 | 1,710 | 7 | 1,811 | 97 | 735 | (966) | 753 | (1,550) | 479 |
| Plus: Anticipated DIP Loan Proceeds | | | | | | | | | | 1,066 | | 1,651 | |
| **Ending Cash Balance, Bank Adjusted** | 3,996 | 2,400 | 3,187 | 1,121 | 1,710 | 7 | 1,811 | 97 | 735 | 100 | 753 | 100 | 479 |
| Cumulative DIP Loan Balance | - | - | - | - | - | - | - | - | - | 1,066 | 1,066 | 2,717 | 2,717 |
| Anticipated DIP Loan Commitment | - | - | - | - | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 |
| Excess DIP Loan Availability | - | - | - | - | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 1,934 | 1,934 | 283 | 283 |