TRENK, DIPASQUALE,
DELLA FERA & SODONO, P.C.
347 Mount Pleasant Avenue, Suite 300
West Orange, New Jersey 07052
(973) 243-8600
Joseph J. DiPasquale (jdipasquale@trenklawfirm.com)
Adam D. Wolper (awolper@trenklawfirm.com)
*Proposed Co-Counsel for Official Committee of Unsecured Creditors*

-and-

ARENT FOX LLP
1675 Broadway
New York, New York 10019
(212) 484-3925
Robert M. Hirsh (robert.hirsh@arentfox.com)
Leah Eisenberg (leah.eisenberg@arentfox.com)
*Proposed Co-Counsel for Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>EAST ORANGE GENERAL HOSPITAL, INC., *et al.,*[1]<br><br>    Debtors. | Chapter 11<br><br>Case No. 15-31232 (VFP)<br>(Jointly Administered)<br><br>**Hearing Date:  January 14, 2016**<br>**                                11:00 a.m.** |

**APPLICATION IN SUPPORT OF MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF EAST ORANGE GENERAL HOSPITAL, INC., FOR AN ORDER (i) ESTABLISHING PROCEDURES FOR COMPLIANCE WITH 11 U.S.C. §§ 1102(b)(3) AND 1103(c), EFFECTIVE AS OF NOVEMBER 23, 2015, AND (ii) AUTHORIZING THE RETENTION OF PRIME CLERK AS INFORMATION AGENT FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS <u>PURSUANT TO 11 U.S.C. § 327 (a), EFFECTIVE AS OF NOVEMBER 23, 2015</u>**

The Official Committee of Unsecured Creditors (the "**Committee**") of East Orange

General Hospital, Inc., *et al.,* (the "**Debtors**"), by and through its proposed undersigned counsel,

---
[1] The Debtors and the last four digits of their Employer Identification Numbers are East Orange General Hospital, Inc. (7166) and Essex Valley Healthcare, Inc. (7667).  The Debtors' principal place of business is located at 300 Central Avenue, East Orange, NJ 07018.

hereby files this Application for an Order Establishing Procedures for Compliance with 11 U.S.C. §§ 1102(b)(3) and 1103(c). In support of the Motion, the Committee represents as follows:

## JURISDICTION

1.      This Court has jurisdiction to consider the Application pursuant to 11 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicates for the Motion are Bankruptcy Code §§ 105, 107, 1102 and 1103.

## BACKGROUND

2.      On November, 10, 2015 (the "**Petition Date**") the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

3.      The Debtors continue to operate their business and manage their financial affairs as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4.      On November 23, 2015 (the "**Committee Formation Date**"), the Office of the United States Trustee appointed the Committee. The Committee selected Trenk, DiPasquale, Della Fera & Sodono, P.C., and Arent Fox LLP (collectively, "**Counsel**") as its counsel, and Cohn Reznick LLP as its financial advisor (the "**Financial Advisor**," and collectively with Counsel, the "**Professionals**").

5.      Subsequent to the formation of the Committee, the Debtors requested and the Committee agreed to execute a confidentiality agreement (the "**Confidentiality Agreement**"), which, with certain exceptions, will prohibit the Professionals as well as the Committee members from disseminating the Debtors' proprietary information, including, but not limited to confidential, proprietary, privileged, or non-public information concerning the Debtors, including such information with respect to the acts, conduct, assets, liabilities and financial

condition of the Debtors, the operation of the Debtors' business and desirability of the continuation of such business, or any other matter relevant to this case or to the formulation of a chapter 11 plan, whether provided by or on behalf of the Debtors or by any third party and including all items that are provided under the Confidentiality Agreement (the "**Debtors' Confidential Information**") received as a result of being members of the Committee in the exercise of their fiduciary duties.

6.  Discussions regarding the status of the Debtors' cases, financing, and the Debtors' strategy to reorganize their businesses have taken place between the Professionals and the Debtors. In connection with these discussions, the Debtors have already provided and/or agreed to provide certain of Debtors' Confidential Information to the Committee with the understanding that such information will be kept confidential by the Committee and will ultimately be governed by the Confidentiality Agreement.

7.  In addition to Debtors' Confidential Information provided by the Debtors to the Committee, the Committee (i) may also obtain material non public information through the conduct of its due diligence, the public disclosure of which may have an impact on the Debtors' business or ability to reorganize, regardless of whether such information is confidential, privileged, or proprietary ("**Other Confidential Information**"); and (ii) will also obtain information which is subject to the protection of the attorney-client privilege and work-product privileges between the Committee, its Counsel and Financial Advisors, the Committee members and any of their respective agents, advisors or counsel, the disclosure of which may constitute a general waiver of the attorney-client, work-product or other privilege ("**Privileged Information**," and together with the Debtors' Confidential Information and Other Confidential Information, hereinafter collectively referred to as the "**Confidential Information**").

3

**RELIEF REQUESTED**

8. Under section 1103(c) of the Bankruptcy Code, the Committee is authorized to consult with and investigate the Debtors, participate in plan formulation, and perform other services in the interests of those creditors represented. The Committee is also required to provide access to certain information for creditors represented by the Committee.

9. The Committee, by and through its Counsel, seeks an Order (the "**Procedures Order**"), effective as of the Committee Formation Date, clarifying that Bankruptcy Code §1102(b)(3)(A) does not require the Committee to disseminate any (a) confidential, proprietary, non-public, or privileged information concerning the Debtors, including, but not limited to, the assets or financial condition of the Debtors, the operation of the Debtors' business, the desirability of the continuance of such business, or any other matter relevant to these cases or the formulation of a plan; or (b) any other confidential information concerning the Debtors. Ultimately, the Committee requests that the Court deem the Committee and its advisors to be in compliance with Bankruptcy Code § 1102(b)(3), as a result of the implementation of the procedures described herein (the "**Procedures**").

10. The Committee has authorized and instructed Counsel to establish a system to disseminate certain non-confidential information to general unsecured creditors. Information shall be disseminated to non-member, general unsecured creditors of the kind holding claims as contemplated under Section 1102 of the Bankruptcy Code (the "**1102 Creditors**"), by accessing such information on an accessible website (the "**Website**"). Prior to such access, 1102 Creditors must contact Counsel to obtain a username and password.

11. Included within the information available on the Website will be the following: (i) the Petition Date, the case number, and a general overview of the Debtors' bankruptcy case;

4

(ii) the contact information for the Debtors, the Debtors' counsel, the Committee Chairperson, and the Committee's Counsel; (iii) information regarding significant events in the case and relevant deadlines, including claims bar date and plan voting and objection deadlines and any pleadings that are relevant thereto; (iv) any press releases issued by the Committee or by the Debtors; (v) general case information updated periodically, (vi) instructions to creditors for providing comments to the Committee and any solicitation of comments pursuant to Bankruptcy Code §1102(b)(3)(B); (vii) links to other relevant websites (e.g. the Debtors' corporate website, the Bankruptcy Court website, the United States Trustee's website), (viii) the means by which creditors can petition the Court for access to additional information pursuant to Bankruptcy Code § 1102(b)(3)(C) and; (viii) any other information that the Committee, in its sole discretion, deems appropriate, subject to the restrictions and limitations in the proposed Procedures Order.

12. The Website also allows comments and questions from creditors to Counsel ("**Creditor Communications**").

13. Any written communications with the general unsecured creditors in response to Creditor Communications will be made only by the Chairperson or the Committee's Counsel in accordance with the Committee's by-laws.

14. The Committee asserts that none of its members or professionals should be liable to an individual or entity, including the Debtors, for acts omitted or taken in accordance with their statutory duties and obligations, unless those actions constitute gross negligence, willful misconduct, or an intentional breach of fiduciary duty.

15. Finally, pursuant to section 327(a) of the Bankruptcy Code, the Committee requests entry of an order authorizing the Committee to retain Prime Clerk, LLC ("**Prime Clerk**") as the Committee's information agent, effective as to November 23, 2015, and that the

5

Debtors be authorized to compensate Prime Clerk pursuant to the terms of the Engagement Agreement ("**Engagement Agreement**") without the requirement of a formal fee application or leave from the Court. A copy of the proposed Engagement Agreement is annexed hereto as **Exhibit "A"**.

16. The relief requested ensures that the Committee is allowed to perform its statutory duties and obligations and that confidential information pertaining to the Debtors will not be disseminated to the detriment of the Debtors' estates.

## BASIS FOR RELIEF REQUESTED

### I. The Statute is Ambiguous

17. The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("**BAPCPA**") added section 1102(b)(3) which provides as follows:

> A committee appointed under subsection (a) shall –
>
> (A) provide access to information for creditors who –
>   (i) hold claims of the kind represented by that committee; and
>   (ii) are not appointed to the committee;
> (B) solicit and receive comments from the creditors described in subparagraph (A); and
> (C) be subject to a court order that compels any additional report or disclosure to be made to the creditors described in subparagraph (A).

11 U.S.C. § 1102(b)(3).

18. Additionally, Bankruptcy Code § 1103(c) provides for the primary duties of the Committee as follows:

> A committee appointed under section 1102 of this title may –
> (1) consult with the trustee or debtor in possession concerning the administration of the case;
> (2) investigate the acts, conduct, assets, liabilities and financial condition of the debtor, the operation of the Debtors' business and

>   the desirability of the continuance of such business and any other matter relevant to the case or to the formulation of a plan;
>   (3)   participate in the formulation of a plan, advise those represented by such committee of such committee's determinations as to any plan formulated and collect and file with the court acceptances or rejections of a plan;
>   (4)   request the appointment of a trustee or examiner under section 1104 of this title; and
>   (5)   perform such other services as are in the interest of those represented.

11 U.S.C. § 1103(c).

19. When a statute is clear and unambiguous, the "sole function of the courts is to enforce it according to its term." *U.S. v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241 (1989) (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)). On the other hand, where literal application of a statute will produce a "result demonstrably at odds with the intention of its drafters…the intention of the drafters, rather than the strict language, controls." *Id*. At 242-43 (citing *Griffin v. Oceanic Contractors, Inc*., 458 U.S. 564 (1982)) (internal quotations omitted).

20. The Committee respectfully submits that section 1102(b)(3)(A) of the Bankruptcy Code is ambiguous. It simply requires a committee "to provide access to information" without setting forth guidelines as to the type, kind and extent of the information to be provided. BAPCPA does not define what "information" the Committee must make available to its constituency. *See In re Refco Inc*., 336 B.R. 187 (Bankr. S.D.N.Y. 2006). More specifically, "section 1102(b)(3)(A) might be interpreted to impose an obligation contrary to other applicable laws and the Committee's fiduciary duties and hamper the Committee's performance under section 1103 of the Bankruptcy Code." *Id*. at 190.

21. The legislative history behind Bankruptcy Code § 1102(b)(3) is scarce and largely unhelpful. In *Refco*, the Court noted that the House Report merely states that:

7

> "Section 405(b) requires the committee to give creditors having claims of the kind represented by the committee access to information. In addition, the committee must solicit and receive comments from these creditors, and pursuant to court order, make additional reports or disclosure available to them."

*Id*. (citing H.R.Rep. No. 109-31, 109 Cong., 1st Sess. 87 (2005)).

22. It is unlikely that the drafters of the aforementioned provisions intended to provide creditors with unrestrained access to privileged or confidential information pertaining to a debtor. To do so would frustrate the purpose of the Committee.

23. The Committee is concerned and believes that, if it is required to provide access to all information with comes into its possession without any limitations, such access could adversely affect and prejudice the Debtors' business and the ability of the Debtors and/or the Committee to take actions to maximize recovery by unsecured creditors. As stated in the Refco Motion, "providing unfettered access to the [Confidential Information] undoubtedly will allow competitors of the Debtors to use such information, including any business plan of the Debtor, trade secrets, or other proprietary information, to that competitor's advantage and, more importantly, to the disadvantage of the Debtors." Refco Motion at ¶18.

24. Further, as the Committee has already agreed to execute, and indeed has executed, a confidentiality agreement, it is clear that the Debtors are concerned about the issue of a release of Confidential Information. Thus, the need for the Procedures in this case is clear.

25. The statutory provision requiring the Committee to provide access to information to other general unsecured creditors could also impact the attorney-client privilege and work product privileges between the Committee, its Counsel and Financial Advisor, and the Committee Members or any of their respective agents, advisors, or counsel. *Cf. In re Baldwin-United Corp., D.H.* 38 B.R. 802, 805 (Bankr. S.D. Ohio 1984)(creditors' committee entitled to

8

protection of attorney-client privilege). In *Refco*, the court stated that "[m]aintaining confidentiality against unsecured creditors generally may be necessary to preserve the committee's attorney-client privilege." *Refco*, 336 B.R. at 197 *citing*, *In re Subpoenas Duces Tecum*, 978 F.2d 1159, 1161 (9th Cir. 1992). The court further noted that "one should proceed cautiously concerning the disclosure of information that could reasonably have the effect of waiving the attorney-client or other privilege . . . notwithstanding Bankruptcy Code section 1102(b)(3)." *Id*.

## II. The Court's Inherent Powers

26. Various statutory provisions empower this Court to grant the relief requested herein. Bankruptcy Code § 105(a) of the Bankruptcy Code states that the Court may "issue any order...that is necessary or appropriate to carry out the provisions of this title." The Committee believes that the relief requested herein is necessary for the Committee to fulfill its statutory duties under Bankruptcy Code §§ 1102(b)(3) and 1103(c). Bankruptcy Code § 1102(b)(3)(A) might have a substantial "chilling effect" on information the Debtors would be willing to share with the Committee, and the Committee's development of independent analyses of sensitive and potentially prejudicial information. Therefore, the Committee's request is necessary and appropriate to carry out the provisions of the Bankruptcy Code.

27. Further, Bankruptcy Code § 107(b)(1) provides that "on request of a party in interest, the bankruptcy court shall...protect an entity with respect to a trade secret or confidential research, development, or commercial information." That section, along with Bankruptcy Rule 9018, empowers this Court to protect the privileged and proprietary Confidential Information from disclosure to general creditors.

28. In this case, the Committee shares the concerns expressed by the official committees of unsecured creditors and by the debtors in the following cases: *In re Refco, Inc, et al.,* Case No. 05-60006-RDD (Bankr. S.D.N.Y.); *In re Calpine Corp., et al.,* Case No. 05-60200 (Bankr. S.D.N.Y.), *In re FLYi Inc., et al.* Case No. 05-20011 (Bankr. D. Del.); *In re Nobex Corp.,* Case No. 05-20050 (Bankr. D. Del.); *In re Nellson Nutraceutical, Inc.,* Case No. 06-10072 (Bankr. D. Del.); and *In re Pliant Corp., et al.,* Case No. 06-10001 (Bankr. D. Del).

29. In *Refco* and *Calpine*, the committees noted that:

> Absent clarification, a statutory committee's efforts may be frustrated because Debtors will be reluctant to share confidential information, sensitive financial and strategic information with the committee - the exact information a committee needs and typically receives to assist it in the discharge of its fiduciary obligations. In addition, committees will be reluctant to pursue an investigation of potential targets of litigation on behalf of the debtors' estate, and to develop their own analyses of estate assets. Absent relief of kinds *[sic]* sought herein, debtors will undoubtedly be concerned that information shared with the statutory fiduciary may be shared with the public, including competitors and interested acquirers. Similarly, committees will be concerned that the fruits of their own investigation may be disseminated to inappropriate parties. In turn, these concerns will impede a statutory committee's own efforts to obtain information, which will undermine the committee's ability to maximize creditor recoveries. Certainly, the drafters could not have intended section 1102(b)(3) to hinder the Committee's authority under section 1103(c) of the Bankruptcy Code.

See *Refco,* Dkt. No. 133 (the "**Refco Motion**"), at ¶ 14; and *Calpine*, Dkt. No. 494 (the "**Calpine Motion**") at ¶ 14.

30. The Bankruptcy Court for Southern District of New York granted the Refco [Dkt. Nos. 888 and 1025] and Calpine Motions [Dkt. No. 811], approving virtually the same procedures as those requested herein.

31. Debtors have made similar arguments as those made in the Refco and Calpine Motions and filed similar requests for relief in *FLYi* [Dkt. No. 23] (debtors stated that they

"would be highly discouraged from giving confidential information to the Creditors Committee"), and *Nellson* [Dkt. No. #17] and *Nobex* [Dkt. No. #116]. Those motions were all granted by the Bankruptcy Court for the District of Delaware.

32. In *Pliant*, the Official Committee of Unsecured Creditors filed that certain Motion of the Official Committee of Unsecured Creditors for an Order Establishing Procedures for Compliance with 11 U.S.C. § 1102(b)(3) [Dkt. No. 270] (the "**Pliant Motion**"), seeking essentially the same relief as requested in the Refco and Calpine Motions. The Bankruptcy Court for the District of Delaware approved the Pliant Motion and an Order was entered on March 9, 2006 [Dkt. No. 344].

33. Essentially, the requirements of Bankruptcy Code §§ 1102(b)(3) and 1103(c) must not produce a result that will hamper the ability of the Committee to adhere to its fiduciary obligations. The Procedures proposed herein will provide a significant amount of non-Confidential Information to general unsecured creditors and create a means by which creditors may contact the Committee or its Counsel to ask questions and provide comments. The Procedures, however, also recognize and take into account the interests of the Debtors, as well as the Committee, in protecting the Confidential Information from being disseminated to the general public.

### III.    Retention of Prime Clerk, LLC as the Committee's Information Agent

34. The Committee believes that its statutory obligations as outlined in section 1102(b)(3) of the Bankruptcy Code can be most efficiently fulfilled through the establishment and maintenance of a website that provides creditors with access to pleadings filed in the case and permits creditors to communicate confidentially with the members of the Committee and its professionals.

11

35. Maintenance of such a website is a predominantly administrative task and the Debtors' estates should realize a cost savings by retaining a third-party to perform such functions. A website would relieve the Committee's counsel and professional financial advisors of the burdens associated with producing commonly-requested information to creditors.

36. Pursuant to this Court's November 13 Order, Prime Clerk was retained and currently serves as the Claims and Noticing Agent in these cases. In connection with that role, Prime Clerk has already established a case-specific website providing access to documents, case information, and notifications pertaining to important deadlines in the instant case. Interested parties may download a proof of claim or submit questions on the aforementioned website.

37. Should Prime Clerk be retained, aspects of the aforementioned website will have to be customized to suit the Committee's needs (i.e., allowing creditors to confidentially communicate with or access information from the Committee and its professionals).

38. Due to the availability of the case-specific website, it is more cost effective to engage Prime Clerk to aid the Committee in performing its statutory duties.

39. Were the Committee required to select an information agent other than Prime Clerk, it would result in the creation of two separate websites performing essentially duplicative functions. This would only result in needless additional administrative costs that would not otherwise be incurred if Prime Clerk were retained. Furthermore, the maintenance of a single website avoids the posting of conflicting information on multiple websites.

## **NOTICE**

40. Upon the approval of the Procedures, and after receipt of the appropriate information from the Debtors, the Committee shall send correspondence to all known unsecured creditors holding claims of the kind represented by the Committee, advising those creditors of

the entry of the Procedures Order and providing those creditors with information and access to the Website. The correspondence shall include a copy of the Procedures Order and advise the creditors of their rights to seek a court order compelling further disclosure of information in accordance with Bankruptcy Code §1102(b)(3)(C).

41. The Committee has served this Motion on the Court's Master List as filed by the Debtors in these cases. The Committee asserts that such notice is proper and no other or further notice is necessary.

## NO PRIOR REQUEST

42. The Committee has not previously sought the relief requested herein from this or any other Court.

## WAIVER OF MEMORANDUM OF LAW

43. Because this Motion sets forth the authorities relied upon herein, the Committee respectfully submits that the Motion itself satisfies the requirement regarding the submission of a memorandum of law and that no separate memorandum of law is necessary.

**WHEREFORE**, the Committee requests the entry of an Order (a) approving the Procedures outlined herein and authorizing the Committee to implement same; (b) deeming the Committee, its Counsel, its Financial Advisor, the Committee Members, any of their respective advisors, agents or counsel, to be in compliance with Bankruptcy Code §1102(b)(3) as a result of the implementation of the Procedures, (c) finding that the Committee is not required to provide the Confidential Information to its constituents, (d) providing that none of the Committee, its Counsel, its Financial Advisor, the Committee members any of their respective agents, advisors, representatives or counsel shall have or incur any liability for acts taken or omitted to be taken in compliance with the Procedures, any Confidentiality Agreement or any other provisions of any

order approving this Motion, (e) authorizing the Committee to provide a link to any website established by the Debtors; (f) authorizing, but not requiring, the Committee to retain a Committee Noticing Agent and (g) granting such other related relief as the Court deems appropriate.

                                                                TRENK, DIPASQUALE,
                                                                DELLA FERA & SODONO, P.C.

Dated: December 8, 2015                         By:    /s/ *Joseph J. DiPasquale*
                                                                             Joseph J. DiPasquale

4850-6505-9115, v. 1