UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1**

**PACHULSKI STANG ZIEHL & JONES LLP**
Bradford J. Sandler
919 North Market Street, 17th Floor
Wilmington, Delaware 19899-8705
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
E-mail:bsandler@pszjlaw.com

**EPSTEIN BECKER & GREEN, P.C.**
Daniel Levy
Alkida Kacani
One Gateway Center
Newark, New Jersey 07102
(973) 642-1900

*Counsel to Prospect EOGH, Inc., et al.*

| | |
|---|---|
| In re:<br><br>EOGH Liquidation, Inc.<br>f/k/a East Orange General Hospital, Inc., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 15–31232 (VFP)<br><br>(Jointly Administered) |

**Hearing Date: November 22, 2016 at 10:00 a.m. (Eastern Standard Time)**
**Objection Deadline: November 15, 2016 at 4:00 p.m. (Eastern Standard Time)**

## MOTION OF PROSPECT EOGH, INC., ET AL TO ENFORCE THE SALE ORDER AND FOR SANCTIONS

Prospect EOGH, Inc. ("Prospect" or "Buyer"), the purchaser of substantially all assets of the above-captioned debtors and debtors in possession (the "Debtors"), on behalf of itself and certain of its affiliates, Ivy Holdings, Inc., Ivy Intermediate Holdings, Inc., Prospect Medical Holdings, Inc., and Prospect New Jersey, Inc. (collectively with Prospect, the "Prospect Entities"), move this Court (the "Motion") for entry of an order substantially in the form set forth

[1] The Debtors and the last four digits of their Employer Identification Numbers are EOGH Liquidation, Inc. (f/k/a East Orange General Hospital, Inc.) (7166) and EVHI Liquidation, Inc. (f/k/a Essex Valley Healthcare, Inc.) (7667). The Debtors' principal place of business is located at 300 Central Avenue, East Orange, New Jersey 07018.

as **Exhibit A** hereto (i) enforcing the injunction in the Sale Order and prohibiting Roseann DeNunzio ("DeNunzio") from continuing to violate the Sale Order by pursuing her pending lawsuit against the Prospect Entities in the Superior Court of New Jersey, Law Division, Essex County ("State Court"), and (ii) issuing sanctions against DeNunzio for willfully violating the Sale Order. In support of this Motion, the Prospect Entities respectfully state the following:

**Preliminary Statement**

DeNunzio was employed by Debtor East Orange General Hospital, Inc. and was terminated in August 2015. Subsequently, on November 10, 2015, East Orange General Hospital, Inc. filed its chapter 11 petition with this Court. Several months thereafter, Prospect purchased the assets of East Orange General Hospital, Inc. pursuant to the Amended and Restated Asset Purchase Agreement (the "APA") that was approved by order of this Court. The Sale Order (defined below) is a final order and contains the standard protections for a buyer, including that (i) the Debtors' assets were purchased free and clear of any claims, (ii) litigants are permanently enjoined from pursuing the Prospect Entities for pre-closing claims, and (iii) the Prospect Entities have no successor liability.

DeNunzio received notice of the Debtors' bankruptcy cases and the Debtors' intent to sell all of their assets to Prospect free and clear of liens, claims, and encumbrances. Rather than seeking redress through the bankruptcy process against her former employer, DeNunzio instead chose to sue the Prospect Entities in State Court on a theory of successor liability. Despite a formal demand to cease and desist in light of the Sale Order, DeNunzio has refused. The Prospect Entities have been damaged by having to expend attorney's fees and time

in defending the frivolous lawsuit. In light of the intentional disregard of the Sale Order by DeNunzio, and despite notice of the federal injunction contained in the Sale Order, the Prospect Entities are compelled to file this Motion. Accordingly, the Prospect Entities seeks entry of an order enforcing the injunction in the Sale Order and directing the dismissal of the State Court Action. The Prospect Entities also seek sanctions against DeNunzio for willfully violating the Sale Order.

**Jurisdiction**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

2. This Court also retained exclusive jurisdiction to adjudicate this dispute under the Sale Order, which provides that: "This Court shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Agreement . . . and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale." Sale Order, ¶ 56.

3. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein is sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 9011 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Sale Order.

## Statement of Facts

### A. The Chapter 11 Cases

5. On November 10, 2015, the Debtors each filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code in the District of New Jersey, jointly administered under case number 15-31232 (VFP) (the "Chapter 11 Cases").

### B. The Sale of the Debtors' Assets to Prospect

6. On November 20, 2015, the Debtors and Prospect entered into an Amended and Restated Asset Purchase Agreement, dated as of November 20, 2015 (together with all subsequent amendments, including Amendment No. 1 and Amendment No. 2, the "APA") for the sale (the "Sale") of substantially all of the Debtors' assets to Prospect.

7. On January 21, 2016, the Bankruptcy Court entered its order approving the Sale [Docket No. 330] (the "Sale Order"). The Sale closed as of March 1, 2016 (the "Closing Date").

8. The APA, which was attached to the Sale Order, makes clear that Prospect purchased only the Assumed Liabilities and did not purchase the Excluded Liabilities. APA § 2.4. Specifically, the APA provides that "Excluded Liabilities" are any liability of the Debtors/Sellers:

> arising in connection with the employment by the Sellers, or the termination of any employment by the Sellers, of any Persons, whether as full-time employees, part-time employees, consultants or temporary workers, and including Liabilities for compensation, Claims for workers' compensation or OSHA, or Claims or other grievances by Employees asserting wrongful termination, breach of contract, tort, or other violation of Law by Sellers or any of their Affiliates arising from any facts, events or circumstances arising on or prior to the Closing Date.

APA § 2.4(x).

9. The Sale Order contains the standard protections for Prospect as the Buyer including:

a. Free and Clear. Pursuant to the terms of the Sale Order, the Bankruptcy Court authorized and approved the "Sale" to Prospect of substantially all of the Debtors' "assets free and clear of liens, claims, and encumbrances." Sale Order ¶ 33.

b. No Common Identity. The Court made a finding in the Sale Order that Prospect "is not a mere continuation of the Debtors, there is not substantial continuity between [Prospect] and the Debtors, and there is no continuity of enterprise and no common identity between the Debtors and [Prospect]." Sale Order ¶13.

c. No Successor Liability. The Sale Order provides that "[Prospect] and its Affiliates and their respective successors, assigns, members, partners, principals and shareholders (or equivalent) are not and shall not be (a) deemed a "successor" in any respect to the Debtors or their estates as a result of the consummation of the transactions contemplated by the Asset Purchase Agreement or any other event occurring in the Debtors' chapter 11 cases under any theory of law or equity, (b) deemed to have, de facto or otherwise, merged or consolidated with or into the Debtors or their estates, (c) deemed to have a common identity with the Debtors, (d) deemed to have a continuity of enterprise with the Debtors, or (e)

deemed to be a continuation or substantial continuation of the Debtors or any enterprise of the Debtors. . . . Without limiting the effect or scope of the foregoing, as of the Closing Date, Buyer and its Affiliates and their respective successors, assigns, members, partners, principals and shareholders (or equivalent) shall have no successor or vicarious liabilities of any kind or character." Sale Order, ¶ 39.

d. Permanent Injunction. The Sale Order further provides that "[u]pon consummation of the Sale set forth in the Asset Purchase Agreement, except to the extent included in Assumed Liabilities or Permitted Liens, or to enforce the Asset Purchase Agreement, all entities, including all lenders, debt security holders, equity security holders, governmental, tax, and regulatory authorities, parties to executory contracts and unexpired leases, contract counterparties, customers, licensors, ***litigation claimants***, employees and ***former employees***, and trade or other creditors holding Claims and Interests against the Debtors of the Purchased Assets arising under or out of, in connection with, or in any way relating to, the Assets of the transfer of the Assets to Buyer, hereby are ***forever barred, estopped, and permanently enjoined*** from asserting any Claims and Interests relating to the Assets or the transfer of the ***Assets against Buyer and its Affiliates***, successors, designees, assigns, or property of the Assets, including, without limitation taking any of the following actions with respect to or based on any Interest or Claim relating to the Assets or the transfer of the Assets (other

than Assumed Liabilities): **(a)** ***commencing or continuing in any manner any action or other proceeding against Buyer, its Affiliates***, successors or assigns, assets or properties . . ." (emphasis added). Sale Order ¶ 38.

e. Exclusive Jurisdiction. "***This Court shall retain exclusive jurisdiction to***, among other things, ***adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale***." (emphasis added). Sale Order ¶ 56.

f. Binding on DeNunzio. "This Order shall be binding in all respects upon . . . any holders of Claims and Interests against or on all or any portion of the Purchased Assets . . . ." Sale Order, ¶ 58.

## C. Bankruptcy Notices Sent to DeNunzio

10. DeNunzio had ample notice of these Chapter 11 Cases and the Sale Order.

11. On December 1, 2015, Prime Clerk LLC ("Prime Clerk"), the claims and noticing agent in the Chapter 11 Case, served DeNunzio, and her counsel, with a copy of the *Notice of Commencement of Chapter 11 Bankruptcy Cases and the Meeting of Creditors* [Docket No. 83] ("Notice of Commencement") as evidenced by the Affidavit of Service filed on December 1, 2015 [Docket No. 89].

12. On December 18, 2015, Prime Clerk served DeNunzio, through her counsel, with a copy of the *Notice of Sale of Certain Assets at Auction* (the "Sale Notice") as evidenced by the Affidavit of Service [Docket No. 208], which Sale Notice explicitly states that the "Debtors have requested the Bankruptcy Court enter an order (the "Sale Order"), which provides, among other things, for the sale (the "Sale") of the Acquired Assets *free and clear of*

*all liens, claims, encumbrances and other interests,* to the extent permissible by law, including under section 363(f) of the Bankruptcy Code to Prospect or the Successful Bidder." (emphasis added).

13. On January 22, 2015, Prime Clerk served DeNunzio and her counsel with a copy of the *Notice of Deadline for Filing Proofs of Claim Against the Debtors* ("Bar Date Notice") as evidenced by the Affidavit of Service filed on January 28, 2016 [Docket No. 364] establishing February 26, 2016 as the deadline for filing a proof of claim.

14. On July 14, 2016, Prime Clerk served DeNunzio and her counsel with a copy of the *Notice of (a) Conditional Approval of Disclosure Statement, (b) Combined Hearing on Final Approval of Disclosure Statement and Confirmation of the Plan, and (c) Procedures and Deadline for Voting on the Plan*, among other plan-related documents (the "Plan Confirmation Hearing Notice") as evidenced by that Affidavit of Service filed on July 22, 2016 [Docket No. 730].

15. On September 9, 2016, Prime Clerk served DeNunzio and her counsel with a copy of the *Notice of (I) Entry of Confirmation Order and (II) Effective Date* [Docket No. 803] (the "Notice of Effective Date") as evidenced by that Affidavit of Service filed on September 14, 2016 [Docket No. 807].

**D. The State Court Action**

16. On June 9, 2016, DeNunzio commenced the State Court Action styled as: *Roseann DeNunzio v. Ivy Holdings, Inc.; Ivy Intermediate Holdings, Inc.; Prospect Medical Holdings, Inc.; Prospect New Jersey, Inc.; Prospect EOGH, Inc.; ABC Corporation(s) 1-5; and*

*John and/or Jane Doe(s) 1-5*, Case No. ESX-L-4013-16 (the "State Court Action"). A true and correct copy of the complaint initiating the State Court Action is attached as **Exhibit B** (the "Complaint"). The named defendants are affiliates of Prospect.

17. As set forth in the Complaint, DeNunzio was employed by the Debtor, East Orange General Hospital, Inc., as a laboratory aide and department administrative assistant from March 1968 until August 2015. *See* Complaint at ¶¶ 4-6.

18. DeNunzio was terminated on August 19, 2015, which was approximately two months' prior to the Petition Date and approximately 6.5 months prior to the Sale Closing Date. *See id.* at ¶ 6.

19. Despite the express statements at Paragraph 39 of the Sale Order that there is no successor liability against the Prospect Entities, DeNunzio alleges in the State Court Action successor liability against the Prospect Entities. *See id.* at ¶ 14.

20. On July 25, 2016, counsel for the Prospect Entities served DeNunzio's counsel with notice and demand that DeNunzio voluntarily dismiss the State Court Action against the Prospect Entities with prejudice because it violated this Court's Sale Order. A true and correct copy of the cease and desist letter is attached hereto as **Exhibit C** (the "Cease and Desist Letter"). A copy of the Sale Order was also attached to the Cease and Desist Letter.

21. On August 29, 2016, the Prospect Entities moved to dismiss the State Court Action on the grounds that DeNunzio's claims against Prospect Entities fail as a matter of law under New Jersey Court Rule 4:6-2(e) (the "Motion to Dismiss").

22. On September 30, 2016, the New Jersey State Court denied Prospect's Motion to Dismiss because the legal standard under a Rule 4:6-2(e) motion requires the Court to view all inferences in favor of DeNunzio. A denial of a Motion to Dismiss under Rule 4:6-2(e) is without prejudice. *See Green v. Morgan Properties*, 215 N.J. 431, 451-52 (2013); *Nostrame v. Santiago*, 213 N.J. 109, 126-27 (2013).

23. On October 14, 2016, the Prospect Entities filed a motion to dismiss the State Court Action based on lack of subject matter jurisdiction, or, in the alternative, to stay the State Court Action to allow this Court to rule on the instant Motion. A copy of the motion to dismiss is attached hereto as **Exhibit D**.

24. The motion to dismiss the State Court Action for lack of subject matter jurisdiction, or, in the alternative, to stay the State Court Action is presently set for hearing before the State Court on November 4, 2016.

## Relief Requested

25. By this Motion, the Prospect Entities seek entry of an order substantially in the form attached hereto as **Exhibit A**: (i) enforcing the Sale Order by granting injunctive relief that bars DeNunzio from prosecuting the State Court Action; (ii) dismissing the State Court Action; and (iii) issuing sanctions against DeNunzio for willfully violating the Sale Order.

## Argument

### A. The State Court Action Violates the Sale Order

26. By DeNunzio's own admission, DeNunzio's employment with East Orange General Hospital, Inc. terminated on August 19, 2015, which was approximately two months' prior to the Petition Date and more than six months prior to the Sale Closing Date.

Thus, DeNunzio was never an employee of Prospect. *Cf. Carcasole-Lacal v. Am. Airlines, Inc.*, 2003 WL 21525484, at *6 (E.D.N.Y. July 8, 2003) (dismissing employment discrimination claims against purchaser where plaintiff was never employed by purchaser), *aff'd*, 2005 WL 1587303 (2d Cir. July 7, 2005).

27. The employment discrimination conduct complained of by DeNunzio is an Excluded Liability under the express terms of the APA. See APA § 2.4(x). Moreover, the Prospect Entities cannot be held liable either as a successor to or joint employer with the Debtors. This Court has ruled the Prospect Entities shared no common identity with the Debtors and are not successors of the Debtors. *See* Sale Order, *inter alia*, at ¶¶ 13, 39. Further, the Sale Order expressly states that the Sale to Prospect was free and clear of all liens, claims, and encumbrances, which would extend to DeNunzio's claims. *Id.* at ¶ 33. The Sale Order goes further, specifically providing that former employees, such as DeNunzio, are permanently enjoined from asserting claims against Prospect or any of its affiliates that arose pre-closing. *Id.* at ¶ 38. Finally, the Sale Order states that it is binding on any holders of claims and interest, which includes former employees such as DeNunzio (*Id.* at ¶ 58) and that this Court has the exclusive jurisdiction to adjuciate any disputes concerning or in any way concerning the Sale (*Id.* at ¶ 56).

28. The Third Circuit Court of Appeals has made clear that asset sales free and clear of any interest include sales that extinguish the legal claims of a Debtor's employees. *See In re Trans World Airlines*, 322 F.3d 283 (3d Cir. 2003). In finding that plaintiffs' discrimination claims were extinguished when American Airlines acquired the assets free and

clear pursuant to 11 U.S.C. §363(f), the Third Circuit Court of Appeals noted that "the trend seems to be toward a more expansive reading of 'interests in property' which encompasses other obligations that may flow from ownership of the property' and that to equate an interest in property with in rem interests only would be inconsistent with the statute. *Id.* at 289-290.

29. Courts have routinely relied on the Third Circuit's rationale in Trans World Airlines and rejected employment discrimination claims arising from pre-sale conduct and events. *See, e.g., In re Christ Hospital*, 2014 WL 2135942 (Bankr. D.N.J., May 21, 2014) (granting buyer's motion to enjoin debtor's former employee from prosecuting an action against buyer alleging employment discrimination claims where the Court had authorized the sale of the debtor's assets free and clear and interests and liens pursuant to 11 U.S.C. §363(f));. *Maguire v. Capmark Fin., Inc., No.*, 2010 WL 5067672, at *2 (E.D. Pa. Dec. 6, 2010) (holding that "Maguire's claim for discrimination is an interest in property within the meaning of the Bankruptcy Code because it arises from the sale of business assets to Berkadia. The Bankruptcy Court's order approving the sale of the MSB business 'free and clear' of successor liability precludes Maguire from asserting his discrimination claim against Berkadia" (citations omitted)); *Dunope v. Weirton Steel Corp.*, 2012 WL 366595, at *2 (W.D. Pa. Feb. 2, 2012); *Faulkner v. Bethlehem Steel/Int'l Steel Grp.*, 2005 WL 1172748, at *3 (N.D. Ind. Apr. 27, 2005) (applying Trans World Airlines where plaintiff's employment was terminated due to bankruptcy filing and plaintiff was not reemployed following 363 sale).

30. DeNunzio violated this Court's Sale Order by filing the State Court Action against the Prospect Entities with respect to employment discrimination claims arising from

actions allegedly committed by the Debtors. DeNunzio's claims against the Prospect Entities, including claims alleging successor liability against the Prospect Entities, were expressly barred by the Sale Order, and third parties like DeNunzio were enjoined from bringing lawsuits based on such claims by the Sale Order.

31. DeNunzio's State Court Action is also an impermissible collateral attack on this Court's Sale Order. DeNunzio may not rewrite the Court-approved Sale to a good faith purchaser by simply ignoring the Sale Order. As the Supreme Court noted in *Celotex Corp. v. Edwards*, 414 U.S. 300 (1995): "If respondents believed the Section 105 Injunction was improper, they should have challenged it in the Bankruptcy Court, like other similarly situated bonded judgment creditors have done . . . Respondents chose not to pursue this course of action, but instead to collaterally attack the Bankruptcy Court's Section 105 Injunction in the federal courts in Texas. This they cannot be permitted to do without seriously undercutting the orderly process of the law."

32. These settled principles bind the State Court Action. DeNunzio is subject to the terms of the Court's Sale Order, and is barred by this Court's injunction from pursuing the Prospect Entities. This is especially true because DeNunzio and her counsel were served with all notices possible in the bankruptcy cases, including most notably the Commencement Notice, the Sale Notice, and the Sale Order. Accordingly, this Court should enforce the injunction in the Sale Order and bar DeNunzio from prosecuting the State Court Action.

**C. Sanctions for Intentionally Violating the Sale Order are Appropriate.**

33. To prevail on a claim for sanctions for violating a court order, a plaintiff "must establish that the defendants had notice of the order, the order was clear as to its terms, and the defendants willfully violated the order in bad faith." *In re Lickman*, 297 B.R. 162, 201 (Bankr. M.D. Fla. 2003). "[A] court may assess attorney's fees as a sanction for the willful disobedience of a court order." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991) (internal quotations omitted).

34. As detailed above, DeNunzio was notified at least five times of this bankruptcy, including notice of the Sale Order:

a. On December 1, 2016 DeNunzio and her counsel were served with the Notice of Commencement;

b. On December 18, 2015, DeNunzio's counsel was served with the Sale Notice;

c. On January 22, 2016, DeNunzio and her counsel were served with the Claims Bar Date Notice;

d. On July 14, 2016, DeNunzio and her counsel were served with the Plan Confirmation Hearing Notice; and

e. On September 9, 2016, DeNunzio and her counsel were served with the Notice of Effective Date.

35. There is no question that DeNunzio and her counsel had actual notice of the bankruptcy (indeed the bankruptcy is even referenced in the Complaint initiating the State Court Action). DeNunzio was provided notice over and over again that her rights and remedies may be affected including by the sale of the Debtors' assets free and clear of liabilities in the Sale Order and the Sale Notice. Yet DeNunzio and her counsel chose to ignore the bankruptcy proceedings and commence the State Court Action instead.

36. After the State Court Action was impermissibly commenced, the Prospect Entities sent DeNunzio the formal Cease and Desist Letter, which attached a copy of the Sale Order and notified DeNunzio of the federal injunction contained therein. Still, DeNunzio and her counsel refused to cease prosecution of the State Court Action. The willful refusal to abide by this Court's Sale Order has caused the Prospect Entities to incur significant costs in defending the State Court Action. The Prospect Entities should not have to incur these costs when DeNunzio had actual notice that her conduct was in violation of the Sale Order.

37. Accordingly, sanctions against DeNunzio are warranted because DeNunzio had notice of the Sale Order, the Sale Order was clear and unambiguous on its face, and DeNunzio continued to prosecute the State Court Action in contravention of the plain terms of the Sale Order.

**Conclusion**

For the foregoing reasons, the Prospect Entities respectfully request that the Court enter an order (i) declaring that DeNunzio is violating the Sale Order, (ii) enjoining and staying further prosecution of the State Court Action, (iii) issuing sanctions against DeNunzio and her counsel, and (iv) granting such other and further relief as the Court deems just and proper.

Dated: October 26, 2016

*/s/ Bradford J. Sandler*

PACHULSKI STANG ZIEHL & JONES LLP
Bradford J. Sandler (DE Bar No. 4142)
919 North Market Street, 17th Floor
Wilmington, Delaware 19899-8705
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
E-mail: bsandler@pszjlaw.com

-and-

EPSTEIN BECKER & GREEN, P.C.
Daniel R. Levy
Alkida Kacani
One Gateway Center
Newark, New Jersey 07102
(973) 642-1900

*Counsel to Prospect EOGH, Inc., et al.*